UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY, GEICO
GENERAL INSURANCE  COMPANY and GEICO
CASUALTY COMPANY,

                     Docket No.: 1:22-cv-06158-HG

                  Plaintiffs,

        -against-

ANDREW DAVY, M.D., BIG APPLE MEDICAL
SERVICES, P.C., BIG APPLE MEDICAL SERVICES
D/B/A HOURGLASS MEDICAL SERVICES, ERIC ST.
LOUIS, 1 BROOKLYN CONSULTING GROUP INC.,
PRECISE WELLCARE SERVICES, INC., LAKAYE
SOCIAL & HUMAN SERVICES, LLC; and JOHN DOE
DEFENDANTS "1" through "10",

                  Defendants.

-----------------------------------------------------------------------X

## THE DAVY DEFENDANTS' OPPOSITION STATEMENT
## TO PLAINTIFFS' STATEMENT PURSUANT TO LOCAL RULE 56.1

       Defendants Andrew Davy, M.D. ("Dr. Davy"), Big Apple Medical Services, P.C. and Big

Apple Medical P.C. doing business as Hourglass Medical Services (collectively, "the Davy

Defendants" or "Defendants") by and through their undersigned attorneys, respectfully submit,

pursuant to Fed. R. Civ. P. 56, Local Civil Rule 56.1 and Sections IV.A.5 and IV.B.7 of the

Individual Practices of The Hon. Hector Gonzalez, the following responses in opposition to the

Local Rule 56.1 Statement submitted by Plaintiffs (sometimes also collectively referred to herein

as "GEICO").[*]

---

[*] Each numbered paragraph is a direct quote of the corresponding paragraph submitted as Plaintiffs' Rule 56.1 Statement.  (Plaintiffs' counsel provided the MS Word file of their Rule 56.1 Statement for that purpose.)  Each numbered paragraph is followed by the Davy Defendants' Response to the same.

# I.    The Defendants

1.    Defendant Andrew Davy, M.D. ("Davy") was, at all relevant times, a resident of New York, and was licensed to practice medicine in the State of New York. See Answer to Amended Complaint, D.E. 30 ("Amended Answer"), ¶ 33.

**The Davy Defendants' Response:**  The Davy Defendants admit the same.

2.    Davy owns Big Apple Medical Services, P.C. ("Big Apple"), Big Apple Medical Services, P.C. d/b/a Hourglass Medical Services ("Hourglass")(collectively, the "Davy PCs"). See Answer to Complaint, D.E. 20 ("Answer"), ¶ 3.

**The Davy Defendants' Response:**  The Davy Defendants admit the same.

3.    Big Apple is a New York professional corporation with its principal place of business in Brooklyn, New York. See Amended Answer, ¶ 34.

**The Davy Defendants' Response:**  The Davy Defendants admit the same.

4.    Hourglass is an assumed name for Big Apple with its own tax identification number. See Amended Answer, ¶ 35.

**The Davy Defendants' Response:**  The Davy Defendants admit the same.

5.    Over the last five years, Davy has provided interventional pain medicine and anesthesia through the Davy PCs. See Deposition of Andrew Davy, M.D. ("Davy Dep."), 23:16-19.

**The Davy Defendants' Response:**  The Davy Defendants admit the same.

6.    Since 2021, Davy operated the Davy PCs out of 4310 Church Avenue, Brooklyn, New York. However, he performed anesthesia services at the offices of other doctors. See Davy Dep., 27:24-25, 28:1-3, 30:20-25.

**The Davy Defendants' Response:**  The Davy Defendants admit the same.

7.     Defendant Eric St. Louis ("St. Louis") manages medical offices. St. Louis is not a licensed healthcare professional. <u>See</u> Davy Dep., 22:11; Declaration of Dr. Scott Metzger ("Metzger Decl.") ¶_____.

**The Davy Defendants' Response:**  The Davy Defendants admit Dr. Davy's belief that that St. Louis manages medical offices, but the Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of rest of this statement.

8.     St. Louis is the owner of Defendants 1 Brooklyn Consulting Group, Inc. ("1 Brooklyn"), Precise Wellcare Services, Inc. ("Precise"), and Lakaye Social & Human Services, LLC ("Lakaye")(collectively, with St. Louis, the "St. Louis Defendants"). St. Louis is also the owner of Lawrence Chiropractic and Diagnostic Services, P.C. ("Lawrence Chiropractic"). <u>See</u> Declaration of Michael Vanunu ("Vanunu Decl.") ¶_____.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

9.     Davy met St. Louis through business fundraising events, was recruited by St. Louis about a business opportunity and the two became business associate regarding the Davy PCs. <u>See</u> Davy Dep., 11:15-19, 22:17-20, 57:8-11.

**The Davy Defendants' Response:**  The Davy Defendants admit the same, except clarify that the fundraising events were not "business fundraising events" but rather events to raise money for other purposes (such as political campaigns).

10.     St. Louis managed the operations of the Davy PCs between May 2021 and March 2022. <u>See</u> Davy Dep., 55:11-57:8.

**The Davy Defendants' Response:**  The Davy Defendants admit the same.

11.     St. Louis managed the medical practices in the name of the Davy PCs, which provided extra corporeal shockwave therapy services ("ESWT" or "shockwave therapy"), transcranial doppler testing ("TDT"), and videonystagmus testing ("VNG") from May 2021 to March 2022. <u>See</u> Davy Dep., 55:15-56:17; Declaration of Kathleen Asmus ("Asmus Decl."), ¶ ___.

**The Davy Defendants' Response:**  The Davy Defendants admit the same.

12.     Davy ceded control of the Davy PCs' medical practices to St. Louis, at least as related to treatment purportedly for ESWT, TDT, and VNG,. <u>See</u> Metzger Decl. ¶____.

**The Davy Defendants' Response:**  The Davy Defendants deny the same as phrased, but instead, as stated above, admit that Dr. Davy permitted St. Louis to manage the same.

13.     When asked if St. Louis offered Davy an opportunity to make money for services that he would supervise, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 57:19-25.

**The Davy Defendants' Response:**  Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.)  The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue.  Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

14.     When asked if St. Louis propositioned Davy to be in a partnership for money for services to be billed for No-Fault patients, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 58:2-15.

**The Davy Defendants' Response:**  Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an

assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

15.     When asked about the specifics of St. Louis' control of the Davy PCs, Davy asserted his Fifth Amendment right against self-incrimination. <u>See</u> Davy Dep., 58:11-19, 62:18-64:24, 70:2-80:12.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

## II.     The Davy PCs' Bills to GEICO for No-Fault Benefits

16.     GEICO compiled a search using a tax identification number ("TIN Run") setting forth the information contained on the bills submitted or caused to be submitted to GEICO through Defendant Big Apple (tax identification number 82-0995207) and Hourglass (tax identification number 81-1274883). <u>See</u> Asmus Decl., ¶ ___.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an

assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) This is an improper statement of alleged evidence to which no response is required.

17.     Between May 2021 and March 2022, the Davy PCs billed GEICO more than $1 million seeking to collect no-fault insurance benefits ("No-Fault Benefits") for ESWT, TDT, and VNG services listed as being provided to individuals insured by GEICO ("Insureds"). <u>See</u> Asmus Decl., ¶\_\_\_.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

18.     When the Davy PCs submitted bills to GEICO, they used New York State No-Fault billing forms ("NF Forms"). <u>See</u> Asmus Decl., ¶ \_\_\_.

**The Davy Defendants' Response:** The Davy Defendants admit the same.

19.     Each NF Form submitted to GEICO through the Davy PCs listed (i) the services performed which sought payment by identifying the CPT Code, (ii) where the services were performed and (iii) who personally performed or directly supervised the services. <u>See</u> Asmus Decl., ¶ \_\_\_\_.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

20.     In each NF Form submitted to GEICO, Davy and the Davy PCs represented that they were eligible to collect No-Fault Benefits as they were in compliance with all New York State or local licensing requirements necessary to perform the ESWT, TDT, and VNG services. <u>See</u> Asmus Decl., ¶ \_\_\_.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

21. In each NF Form submitted to GEICO, Davy and the Davy PCs represented that they were entitled to collect No-Fault Benefits for the services performed on Insureds. <u>See</u> Asmus Decl., ¶ ___.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

22. In each NF Form submitted to GEICO, Davy and the Davy PCs represented that the individual identified as the treating provider personally provided or directly supervised the specific healthcare services identified, by CPT Code, in the NF Form. <u>See</u> Asmus Decl., ¶ ___.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

23. In each NF Form submitted to GEICO, Davy and the Davy PCs represented that the specific healthcare services identified, by CPT Code, in the NF Form was performed on the listed Insured. <u>See</u> Asmus Decl., ¶ ___.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information

sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

24.     In each NF Form submitted to GEICO, Davy and the Davy PCs represented that they were entitled to collect No-Fault Benefits because the billed-for healthcare services was medically necessary for the Insured. <u>See</u> Asmus Decl., ¶ ___._.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

25.     Each NF Form submitted to GEICO by the Davy PCs for ESWT, TDT, and VNG identified Davy as (i) the person who personally performed or directly supervised the ESWT, TDT, and VNG services, and (ii) the owner of the Davy PCs. <u>See</u> Asmus Decl., ¶ ____; Declaration of Jacqueline Thelian ("Thelian Decl."), ¶____.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

26.     Each NF Form submitted to GEICO by the Davy PCs for ESWT, TDT, and VNG was dated and contained Davy's name in the "Provider's signature" section. <u>See</u> Asmus Decl., ¶ ____.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

27.     Each NF-3 submitted by the Davy PCs to GEICO was verified by Davy subject to the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for commercial insurance or a statement of claim for any commercial or personal insurance benefits containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, . . . commits a fraudulent insurance act, which is a crime.

See Asmus Decl., ¶ _____.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

28.     The NF Forms submitted to GEICO state that ESWT, TDT, and VNG, were performed by Davy on behalf of the Davy PCs from the following locations:

| Treatment Address | Treatment Location | Davy PC | Service Type |
|---|---|---|---|
| 240-19 Jamaica Avenue | Queens | Hourglass | ESWT |
| 7945 Metropolitan Avenue | Queens | Hourglass | ESWT |
| 2354 Westchester Avenue | Bronx | Hourglass | ESWT |
| 3027 Avenue V | Brooklyn | Hourglass, Big Apple | ESWT, TDT, and VNG |
| 14 North Main Street | Spring Valley | Hourglass, Big Apple | ESWT |
| 3027 Utica Avenue | Brooklyn | Hourglass | ESWT |
| 4009 Church Avenue | Brooklyn | Hourglass, Big Apple | ESWT |
| 3805 Church Avenue | Brooklyn | Hourglass, Big Apple | ESWT |
| 1 Fulton Avenue | Nassau | Hourglass, Big Apple | ESWT |
| 156 Dolson Avenue | Middletown | Hourglass, Big Apple | ESWT |
| 1122 Coney Island Avenue | Brooklyn | Hourglass, Big Apple | ESWT, TDT, and VNG |
| 1847 Utica Avenue | Brooklyn | Hourglass, Big Apple | ESWT, TDT, and VNG |
| 280 Broadway | Newburgh | Hourglass, Big Apple | ESWT |
| 9205 Rockaway Blvd | Queens | Big Apple | TDT and VNG |
| 1650 Eastern Pkwy | Queens | Big Apple | ESWT |
| 8555 Little Neck Pkwy | Queens | Big Apple | TDT and VNG |
| 420 Doughty Blvd | Inwood | Big Apple | ESWT, TDT, and VNG |

See Asmus Decl., ¶ _____.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

29.     The NF Forms submitted to GEICO from the Davy PCs did not reference or otherwise indicate St. Louis's involvement with the Davy PCs. <u>See</u> Asmus Decl., ¶ ____.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

30.     The NF Forms submitted to GEICO from the Davy PCs for ESWT, TDT, and VNG included medical records purporting to support the charges by representing that the ESWT, TDT, or VNG services were performed on Insureds. See Metzger Decl., ¶___; Thelian Decl., ¶____.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

31.     The medical records attached to the bills to GEICO from the Davy PCs represented that the ESWT, TDT, and VNG services were performed by Davy because they included Davy's signature. <u>See</u> Metzger Decl., ¶____; Thelian Decl., ¶ ___.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

32.     However, all of Davy's signatures on the medical records attached to the bills were not legitimate, as the records were not authored or signed by Davy. See Metzger Decl., ¶____; Thelian Decl., ¶ ___.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

33.     All of the signatures on the medical records containing Davy's name appear to have been pre-printed as they are identical and have the same exact letter shape and ink pressure. See Metzger, Decl. ¶____.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

34.     Davy did not personally perform or actually supervise any of the services, listed as ESWT, TDT, or VNG, performed on GEICO-insureds. See Thelian Decl., ¶____; Metzger Decl., ¶ _____.

**The Davy Defendants' Response:** Dr. Davy during his deposition in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination with respect to this issue and, accordingly, no further response is provided here.

35.     When asked if Davy signed any documents that were given to him by St. Louis as it relates to the services billed through the Davy PCs, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., 88:25-89:23.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

36.    When asked if Davy had conversations with St. Louis regarding the performance of shockwave therapy through the Davy PCs, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 87:14-88:11.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

37.    When asked if Davy ever performed shockwave therapy, radial wave pressure therapy, TDT, or VNG through the Davy PCs, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 41:6-9, 41:24-25, 42:2-14, 43:5-19, 44:18-25, 45:2-12.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-

incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

38. When asked if Davy performed any services, looked at any medical records, or saw a single patient at any location through the Davy PCs from 2021 through 2023, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., 59:7-60:18.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, not a description of evidence." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

### III.  Operation of Davy PCs and Lack of Medical Necessity for the Fraudulent Services

39. Davy entered into agreements where he retained law firms including the Law Offices of Gabriel & Moroff, P.C. ("G&M"), the Law Offices of Gill Schapira, P.C. ("Schapira PC"), and Korsunskiy Legal Group P.C. ("KLG") to submit and collect No-Fault Benefits from automobile insurers on behalf of the Davy PCs. See Davy Dep., Exs. 5, 25, 27, 32, 101:20-102:22, 183:15-186:13, 197:6-199:6, 233:25-234:14; Deposition of Jason Moroff ("Moroff Dep."), 9:24-10:13; Deposition of Denis Korsunskiy ("Korsunskiy Dep."), 13:7-14:16, 14:24-15:3.

**The Davy Defendants' Response:** Dr. Davy during his deposition in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination with respect to this issue and, accordingly, no further response is provided here.

40.     KLG submitted bills to GEICO on behalf of Davy and Hourglass. See Asmus Decl.,

¶ _____.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

41.     Denis Korsunskiy ("Korsunskiy"), the principal of KLG, met with Davy in April or May of 2021 when Davy retained KLG to provide services related to submitting and collecting No-Fault Benefits. After that meeting, Korsunskiy did not see Davy again. See Korsunskiy Dep., 13:7-16:8.

**The Davy Defendants' Response:**  Dr. Davy during his deposition in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination with respect to this issue and, accordingly, no further response is provided here.

42.     During the meeting Davy indicated to Korsunskiy that he would be performing "shockwave therapy" that would be billed by KLG. In addition, Davy performed VNG and TDT services that were billed to insurers. See Korsunskiy Dep., 38:9-39:22.

**The Davy Defendants' Response:**  Dr. Davy during his deposition in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination with respect to this issue and, accordingly, no further response is provided here.

43.     KLG used a third-party company to create the bills that were ultimately submitted to No-Fault insurers. See Korsunskiy Dep., 32:17-35:2.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

44.     G&M submitted bills to GEICO on behalf of Davy and Big Apple. <u>See</u> Asmus Decl., ¶ ___.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

45.     RP Billing performed billing services for the Davy PCs from July 2021 to November 2021. RP Billing created the NF Forms on behalf of Big Apple and then sent the NF Forms to G&M who would send the bills to GEICO. <u>See</u> Deposition of Inna Zarester ("Zarester Dep."), 20:4-21:13.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

46.     RP Billing was able to generate the NF Forms because St. Louis dropped off paper records for Big Apple. <u>See</u> Zarester Dep., 33:2-4, 34:23-35:2.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

47.     The NF Forms RP Billing generated on behalf of Big Apple were for ESWT, TDT, and VNG services purportedly provided to Insureds, and listed Davy as the treated provider. <u>See</u> Zarester Dep., Exs. 7, 9, 11, 57:4-16, 64:5-65:8, 66:3-9.

**The Davy Defendants' Response:**  Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

48.     Davy provided RP Billing with the information needed to bill No-Fault insurers, by giving RP Billing Big Apple's name, its tax identification number, and told RP Billing to use Davy's name as the treating provider on all of the bills. See Zarester Dep., 61:7-17.

**The Davy Defendants' Response:**  The Davy Defendants deny the same.

49.     Davy was aware of the CPT codes included in the NF Forms as he discussed the services he rendered and the CPT codes with RP Billing. See Zarester Dep., 25:7-18.

**The Davy Defendants' Response:**  Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

50.     Davy specifically directed RP Billing what CPT codes he wanted on the bills that RP Billing was generating. See Zarester Dep., 57:3-13, 66:4-8.

**The Davy Defendants' Response:**  The Davy Defendants deny the same.

51.     The purported ESWT, TDT, or VNG services were actually performed on Insureds by technicians, who were not licensed healthcare providers. See Metzger Decl., ¶____; Thelian Decl., ¶____.

**The Davy Defendants' Response:**  Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

52.     The NF Forms submitted to GEICO by the Davy PCs did not identify any technicians who performed ESWT, TDT, or VNG. See Asmus Decl., ¶ ____.

**The Davy Defendants' Response:**  Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information

sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

53.    When asked what the technicians were supposed to do and what services they performed, Davy invoked the Fifth Amendment privilege against self-incrimination.  See Davy Dep., 116:7-117:2.

**The Davy Defendants' Response:**  Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, not a description of evidence."  (Emphasis added.)  The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue.  Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

54.    Davy was aware that all the services billed through the Davy PCs were performed by technicians.  See Davy Dep., 54:13-55:4.

**The Davy Defendants' Response:**  The Davy Defendants admit the same, based on statements made to Dr. Davy by St. Louis.  However, due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, the Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of anything that St. Louis told Dr. Davy.

55.    Midwood Solutions ("Midwood") is a medical technician company that provided services for Big Apple.  See Deposition of Yevhen Musayelyan ("Musayelyan Dep."), 16:23-17:3, 21:3-11.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

56.     St. Louis discussed with Midwood about providing shockwave therapy for Big Apple. See Musayelyan Dep., 21:15-22:16; 23:12-17.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

57.     Yevhen Musayelyan ("Musayelyan"), who is the owner of Midwood and a shockwave technician, never spoke with or met Davy. See Musayelyan Dep., 10:23-11, 17:24-18:6.

**The Davy Defendants' Response:**  The Davy Defendants admit the same, but clarify that Dr. Davy does not know Musayelyan or what businesses he owns.

58.     St. Louis instructed Midwood how many patients to see each day and where to perform services on behalf of Big Apple. See Musayelyan Dep., 22:17-23:11, 31:19-32:6.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

59.     St. Louis provided Midwood with blank "ESWT Notes" forms and blank Assignment of Benefits forms that contained Davy's previously affixed signature. See Musayelyan Dep., Ex. 3, 33:6-34:8.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

60.     St. Louis paid Midwood for its services on behalf of Big Apple with checks from 1 Brooklyn and Precise. See Musayelyan Dep., Ex. 6, 40:11-17.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

61. St. Louis handled the day-to-day operations for the Davy PCs. See Deposition of Yakov Khodazyev ("Khodazyev Dep."), 72:5-19.

**The Davy Defendants' Response:** The Davy Defendants admit the same with respect to the time period and services set forth above, as to management services. However, due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, the Davy Defendants lack knowledge or information sufficient to form a belief as to what St. Louis was doing.

62. When asked whether St. Louis hired technicians on behalf of the Davy PCs, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., 117:3-118:5.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, not a description of evidence." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

63. When asked whether Davy hired any of the technicians who performed services on behalf of the Davy PCs, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., 118:19-119:8.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an

assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

64.    Midwood used a machine called Chattanooga Intelect Mobile 2 RPW device (the "RPW Device") to perform "shockwave" services on behalf of Big Apple. <u>See</u> Musayelyan Dep., 26:22-28:3.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

65.    The RPW device is unable to perform ESWT. <u>See</u> Metzger Decl., ¶____,

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

66.    Instead, the RPW device provides radial pressure wave therapy ("RPW Therapy"), which is remarkably different than ESWT and does not fall within the scope of CPT Code 0101T, which is the CPT Code the Davy PCs used to bill GEICO for ESWT. <u>See</u> Metzger Decl., ¶____; Thelian Decl., ¶____.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

67.    RPW Therapy and ESWT are two separate and distinct healthcare services. <u>See</u> Metzger Decl., ¶____; Thelian Decl., ¶____.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) This is an improper statement of alleged opinion to which no response is required.

68.     Each NF Form to GEICO for ESWT falsely represented that ESWT was provided to an Insured. <u>See</u> Metzger Decl., ¶_____; Thelian Decl., ¶_____.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

69.     No Insureds actually received ESWT from the Davy PCs. All "shockwave services" actually performed on Insureds, which were billed to GEICO as ESWT, were actually RPW Therapy. <u>See</u> Metzger Decl., ¶_____; Thelian Decl., ¶_____.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

70.     All the charges from the Davy PCs for ESWT, although only RPW Therapy, were not medically necessary for the Insureds. <u>See</u> Metzger Decl., ¶_____.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) This is an improper statement of alleged opinion to which no response is required. However, due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, the

Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement to the extent it is factual.

71.     Each NF Form submitted to GEICO in the name of the Davy PCs, falsely represented that Davy personally performed or directly supervised ESWT performed on Insureds. See Metzger Decl., ¶____; Thelian Decl., ¶____.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

72.     Each NF Form submitted to GEICO in the name of the Davy PCs also falsely represented that Davy personally performed or directly supervised TDT and VNG services on Insureds. See Metzger Decl., ¶____; Thelian Decl., ¶____.

**The Davy Defendants' Response:** Due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

73.     Instead, to the extent that any TDT or VNG was actually performed, it was performed without Davy's involvement. See Metzger Decl., ¶____; Thelian Decl., ¶____.

**The Davy Defendants' Response:** Dr. Davy during his deposition in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination with respect to this issue and, accordingly, no further response is provided here.

74.     All the charges from the Davy PCs for TDT and VNG were not medically necessary for the Insureds. See Metzger Decl., ¶____.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, not a description of evidence." (Emphasis added.) This is an improper statement of alleged opinion to which no response is required.

75.     Davy was not properly trained to perform, supervise, or interpret the services billed as VNG and TDT. <u>See</u> Metzger Decl., ¶____.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) This is an improper statement of alleged opinion to which no response is required.

76.     To the extent that any ESWT, RPW Therapy, TDT, and VNG were performed, they were medically unnecessary and were provided as part of a predetermined treatment protocol without any apparent regard for the patients' individual treatment strategy. <u>See</u> Metzger Decl., ¶____; Thelian Decl., ¶____.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) This is an improper statement of alleged opinion to which no response is required. However, due to the nature and scope of the fraud apparently committed by St. Louis unbeknownst to Dr. Davy, the Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement to the extent it is factual.

77.     When asked if Davy ever reviewed any reports regarding services performed by technicians for treatment, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 119:9-120:15.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

78.     Davy has a signature stamp that he keeps at his office. When asked if he gave the stamp to St. Louis, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 83:6-14; 88:18-24.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

79.     When asked if St. Louis controlled the treatment of patients though the Davy PCs at each location, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 67:21-80:12.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-

incrimination presents an evidentiary issue.  Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

## IV.   **Financing and Profits of the Fraudulent Scheme**

80.     Davy retained The Rybak Firm PLLC ("Rybak Firm"), and its principal, in March of 2020 to perform No-Fault collections on behalf of the Davy PCs. See Deposition of Oleg Rybak ("Rybak Dep."), 19:21, 23:23-24:24.

**The Davy Defendants' Response:**  Dr. Davy during his deposition in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination with respect to this issue and, accordingly, no further response is provided here.

81.     Davy signed a payment directive for the Rybak Firm that provided the Ryak Firm with the right to pay 1 Brooklyn, or any other entity directed by Davy and/or his agents, with all monies the Rybak Firm collected on behalf of Big Apple, minus the Rybak Firm's fees. See Rybak Dep., Ex. 3, 29:9-30:10.

**The Davy Defendants' Response:**  Dr. Davy during his deposition in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination with respect to this issue and, accordingly, no further response is provided here.

82.     The Rybak Firm's involvement with Davy and Big Apple involved depositing checks issued to Big Apple and then distributing them to the St. Louis and his entities, as directed by St. Louis. See Rybak Dep., Exs. 6-11, 13, 86:2-99:2.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

83.     Davy, on behalf of Big Apple entered into funding agreements with Global Strategic Group Inc. ("Global Strategic"), Maryik Inc. ("Maryik"), Quest Pro Capital LLC ("Quest Pro"), RJ Capital Debt LLC ("RJ Capital"), New Pacific Inc. ("New Pacific"), Big Bridge Funding LLC. ("Big Bridge"), and East Brook Holding Companies ("East Brook") (collectively, the "Funders"). See Davy Dep., Exs. 3, 5, 8, 10, 89:24-90:18, 150:23-158:14; Vanunu Decl., ¶_____.

**The Davy Defendants' Response:** Dr. Davy during his deposition in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination with respect to this issue and, accordingly, no further response is provided here.

84.     Based on the funding agreements, Funders issued monies (referred to as "advances") to Big Apple, related to claims submitted to insurance companies, at a discount, in exchange for the right to collect payments issued to Big Apple from insurance companies. See Khodazyev Dep., 15:5-16:2; Deposition of Emil Efrem ("Efrem Dep."), 23:15-24:3-8.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

85.     Khodazyev, the owner of New Pacific, was introduced to Davy through St. Louis. Davy confirmed to Khodazyev that he was going to perform "shockwave therapy" and agreed to borrow money from New Pacific. See Khodazyev Dep., 16:18-24, 72:20-73:11.

**The Davy Defendants' Response:** The Davy Defendants deny the same.

86.     Davy signed the funding agreement between Big Apple and New Pacific. See Davy Dep., Ex. 3, 91:17-93:18.

**The Davy Defendants' Response:** Dr. Davy during his deposition in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination with respect to this issue and, accordingly, no further response is provided here.

87.     Related to the funding agreement with New Pacific, Davy signed a payment directive that provided G&M with the right to pay New Pacific all monies G&M collected and deposited into escrow on behalf of Big Apple, minus G&M's fees. <u>See</u> Davy Dep., Ex. 5, 101:20-102:22.

**The Davy Defendants' Response:**  Dr. Davy during his deposition in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination with respect to this issue and, accordingly, no further response is provided here.

88.     New Pacific issued five checks to Big Apple, based on the funding agreement. Four of the checks, Check No. 2172 for $116,698.05, Check No. 2202 for $42,000.00, Check No. 2208 for $30,167.07, and Check No. 2296 for $145,488.06 were deposited two Valley National Bank accounts belonging to The Rybak Firm PLLC ("Rybak Accounts"). <u>See</u> Khodazyev Dep., Ex. 11; Deposition of Oleg Rybak ("Rybak Dep."), Ex. 11, 74:11-76:16; Vanunu Decl. ¶_____.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

89.     One check, Check No. 2297 for $7,500.00 was issued by New Pacific to Big Apple and was deposited into Big Apple's TD bank account. <u>See</u> Vanunu Decl. ¶ _____; Davy Dep., Ex. 13, p. 5.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

90.     Davy did not personally receive any checks issued to the Davy PCs from New Pacific and did not know if New Pacific gave them to St. Louis. <u>See</u> Davy Dep., 100:3-11.

**The Davy Defendants' Response:** The Davy Defendants admit the same.

91.     St. Louis typically was the person who picked-up funding advance checks issued to Big Apple from New Pacific. <u>See</u> Khodazyev Dep., 85:13-86:8.

**The Davy Defendants' Response:**   The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.   Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

92.     Davy did not authorize anyone to deposit the checks from New Pacific into the Rybak Accounts at Valley National Bank. <u>See</u> Davy Dep., 110:13-15.

**The Davy Defendants' Response:**  The Davy Defendants admit the same.

93.     When asked if all interactions on behalf of Big Apple and New Pacific were done by St. Louis, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 98:25-99:15.

**The Davy Defendants' Response:**   Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue.   Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

94.     When asked if St. Louis gave Davy the New Pacific funding agreement to sign, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., Ex. 3, 95:13-18.

**The Davy Defendants' Response:**   Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact

that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

95.     When Davy was asked if checks from New Pacific that he endorsed was his cut for supervising technicians for services performed by Big Apple, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 114:21-116:6.

**The Davy Defendants' Response:**  Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.)  The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue.  Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

96.     When asked if Davy was involved in the entering of any agreements between Big Apple and New Pacific, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 153:24-154:7.

**The Davy Defendants' Response:**  Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.)  The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue.  Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

97.     Khodazyev, the owner of New Pacific, arranged for RJ Capital to provide funding advances for Big Apple. See Khodazyev Dep., Ex. 8, 69:14-71:10.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

98.     There is a funding agreement between RJ Capital and Big Apple that was signed by Davy. See Khodazyev Dep., Ex. 8; Davy Dep., Ex. 8.

**The Davy Defendants' Response:** Dr. Davy during his deposition in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination with respect to this issue and, accordingly, no further response is provided here.

99.     Related to the funding agreement with RJ Capital, Davy signed a payment directive that provided G&M with the right to pay RJ Capital all monies G&M collected and deposited into escrow on behalf of Big Apple, minus G&M's fees. See Davy Dep., Ex. 9, 135:21-136:11.

**The Davy Defendants' Response:** The Davy Defendants admit the same, but only to the extent of admitting that Dr. Davy signed the referenced document. Dr. Davy testified that he did not know the purpose of the document.

100.    RJ Capital issued two checks to Big Apple based on the funding agreement. Check No. 1047 was for $17,000.00 and Check No. 1048 was for $27,526.30. Both checks were deposited into the Rybak Accounts. See Rybak Dep., Ex. 8, 65:14-66:3; Khodazyev Dep., Ex. 13, 90:21-91:10.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

101.     Davy did not authorize anyone to deposit the checks from RJ Capital into the Rybak Accounts at Valley National Bank. <u>See</u> Davy Dep., 139:12-20.

**The Davy Defendants' Response:**  The Davy Defendants admit the same. Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.)  The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue.  Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

102.     When asked if Davy was involved in the entering of any agreements between the Davy PCs and RJ Capital, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 154:23-155:5.

**The Davy Defendants' Response:**  Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.)  The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue.  Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

103.     When asked if all of the money issued to the Davy PCs by RJ Capital went to St. Louis, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 155:13-16.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

104.    There is a funding agreement between Quest Pro and Big Apple that was signed by Davy. <u>See</u> Davy Dep., Ex. 6; Khodazyev, Ex. 5, 55:12-56:2.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

105.    Related to the funding agreement with Quest Pro, Davy signed a payment directive that provided G&M with the right to pay Quest Pro all monies G&M collected and deposited into escrow on behalf of Big Apple, minus G&M's fees. <u>See</u> Davy Dep., Ex. 7, 125:22-127:5.

**The Davy Defendants' Response:** The Davy Defendants admit only that Dr. Davy signed the document.

106.    Quest Pro issued two checks to Big Apple, based on the funding agreement. They were Check No. 1001 for $41,097.21 and a check with no number for $123,832.61, which were deposited into the Rybak Accounts. <u>See</u> Khodazyev Dep., Ex. 12, 89:3-13; Rybak Dep., Ex. 10, 71:18-72:12.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

107.     Davy had never received or seen the checks from Quest Pro and was not aware what they were for. <u>See</u> Davy Dep. 131:3-21.

**The Davy Defendants' Response:** The Davy Defendants admit the same.

108.     Davy did not authorize anyone to deposit the checks from Quest Pro into the Rybak Accounts at Valley National Bank. <u>See</u> Davy Dep., 131:35-132:9.

**The Davy Defendants' Response:** The Davy Defendants admit the same.

109.     When asked if Davy was involved in the entering of any agreements between Big Apple and Quest Pro, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 155:21-156:2.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

110.     When asked if all of the money issued to Big Apple by Quest Pro went to St. Louis, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 156:10-17.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to

this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

111.     Davy signed the funding agreement between Big Bridge and Big Apple. <u>See</u> Davy Dep., Ex. 10, 141:15-143:5.

**The Davy Defendants' Response:**  The Davy Defendants admit the same.

112.     Related to the funding agreement with Big Bridge, Davy signed a payment directive that provided KLG with the right to pay Big Bridge all monies KLG collected and deposited into escrow on behalf of Big Apple, minus KLG's fees.  <u>See</u> Davy Dep., Ex. 11; 144:10-21; Korsunskiy Dep., Ex. 5, 68:24-69:22.

**The Davy Defendants' Response:**  The Davy Defendants admit only that Dr. Davy signed the document.

113.     The Big Bridge funding arrangement between Big Apple and Davy was arranged solely by St. Louis, without the direct involvement of Davy. <u>See</u> Efram Dep., 33:12-36:12.

**The Davy Defendants' Response:**  Dr. Davy during his deposition in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination with respect to this issue and, accordingly, no further response is provided here.

114.     St. Louis agreed with Big Bridge that all of the billing for Davy would go through Korsunskiy. <u>See</u> Efram Dep., 39:15-40:9.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

115.     In July of 2021, St. Louis approached Korsunskiy and advised that he would be bringing KLG batches of claims on behalf of Davy, which would be subjected to funding by Big

Bridge. Korsunskiy spoke to Davy, who confirmed St. Louis's statements. <u>See</u> Korsunskiy Dep., 18:18-20:17.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement, except that Dr. Davy testified that he does not recall speaking to Korsunskiy.

116. Big Bridge issued five checks to Big Apple, based on the funding agreement. Four of the checks, Check No. 1001 for $20,603.00, Check No. 1003, for $155,473.00, Check No. 1025 for $48,002.00, and Check No. 7691 for $57,828.02 were deposited into the Rybak Accounts. <u>See</u> Efrem Dep., Exs. 3-4, 60:17-62:7, Rybak Dep., Ex. 9, 67:24-69:16.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

117. One check, a cashier's check for $2,617.59 was issued by Big Bridge to Big Apple and deposited into Big Apple's TD bank account. <u>See</u> Vanunu Dec., ¶ ____; Efrem Dep., Exs. 3-4, 60:17-62:7.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

118. All of the Big Bridge checks issued to Big Apple were directly given to St. Louis, in person. <u>See</u> Efram Dep., 43:11-19; 61:2-62:14.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

119. Davy had never received or seen [sic] the checks from Big Bridge and was not aware what they were for. See Davy Dep. Ex. 16, 159:9-160:3.

**The Davy Defendants' Response:** The Davy Defendants admit the same.

120. Davy did not authorize anyone to deposit the checks from Big Bridge into the Rybak Accounts at Valley National Bank. See Davy Dep., 160:7-11.

**The Davy Defendants' Response:** The Davy Defendants admit the same.

121. When asked if St. Louis gave Davy the Big Bridge funding agreement or the payment directive to Davy to sign, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., 143:6-147:2.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, not a description of evidence." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

122. When asked if all interactions between Big Bridge and Big Apple were done by St. Louis, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., 150:12-19.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, not a description of evidence." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to

this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

123.    When asked if Davy was involved in the entering of any agreements between Big Apple and Big Bridge, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., 150:23-151:6.

**The Davy Defendants' Response:**  Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, not a description of evidence." (Emphasis added.)  The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue.  Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

124.    When asked if all of the money issued to the Davy PCs by Big Bridge went to St. Louis, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., 151:13-19.

**The Davy Defendants' Response:**  Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, not a description of evidence." (Emphasis added.)  The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue.  Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

125.    Big Apple obtained funding advances from Global Strategic. Specifically, Global Strategic issued three checks to Big Apple, Check No. 1157 for $19,184.83, Check No. 1160 for

$20,619.55 and Check No. 1163 for $10,698.68, which were all deposited into the Rybak Accounts. See Rybak Dep., Ex. 7, 61:1-63:24.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

126.    Davy did not authorize anyone to deposit the checks from Global Strategic into the Rybak Accounts at Valley National Bank. See Davy Dep., 166:17-19.

**The Davy Defendants' Response:** The Davy Defendants admit the same.

127.    When asked if Davy was involved in the entering of any agreements between any of the Davy PCs and Global Strategic, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., 156:18-24.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

128. When asked if all of the money issued to the Davy PCs by Global Strategic went to St. Louis, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., 157:8-15.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

129. Big Apple obtained funding advances from Mayrik. Specifically, Mayrik issued one check to Big Apple, Check No. 531 for $8,841.43, which was deposited into the Rybak Accounts. See Rybak Dep., Ex. 6, 55:15-56:13, 59:24-60:3.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

130. Davy did not authorize anyone to deposit the checks from Mayrik into the Rybak Accounts at Valley National Bank. See Davy Dep., 167:24-168:3.

**The Davy Defendants' Response:** The Davy Defendants admit the same.

131. When asked if Davy was involved in the entering of any agreements between the Davy PCs and Mayrik, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., 157:16-22.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an

assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

132.     When asked if all of the money issued to the Davy PCs by Mayrik went to St. Louis, Davy invoked the Fifth Amendment privilege against self-incrimination. <u>See</u> Davy Dep., 158:6-13.

**The Davy Defendants' Response:**  Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

133.     Big Apple obtained funding advances from Global Strategic. Specifically, Global Strategic issued five checks, Check No. 1176 for $3,890.00, Check No. 1177 for $4,290.36, Check No. 1179 for $4,290.36, Check No. 1180 for $3,500.00, and Check No. 1181 for $1,174.49, which were all deposited into Big Apple's TD bank account. <u>See</u> Vanunu Decl., ____; Davy Dep., Ex. 18, 164:11-165:9.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

134.     When asked if Davy was involved in the entering of any agreements between the Davy PCs and East Brook, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., 153:2-8.

**The Davy Defendants' Response:**   Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, not a description of evidence." (Emphasis added.)  The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue.  Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

135.     When asked what the checks from East Brook were for, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., Ex. 18, 164:11-165:14

**The Davy Defendants' Response:**   Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, not a description of evidence." (Emphasis added.)  The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue.  Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

136.     When asked if these checks were for his cut of his agreement with St. Louis, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., 165:15-21.

**The Davy Defendants' Response:**   Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, not a description of evidence." (Emphasis added.)  The

fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

137. In total, more than $885,000.00 in funding advances issued to Big Apple were deposited into the Rybak Accounts at Valley National Bank. See Rybak Dep., Exs. 6-11.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

138. All of the checks to Big Apple regarding funding advances that were deposited into the Rybak Accounts at Valley National Bank was done without Davy's knowledge. See Davy Dep., 179:7-11.

**The Davy Defendants' Response:** The Davy Defendants admit the same.

139. Rybak regularly spoke with St. Louis regarding the financial transactions at the Rybak Firm on behalf of Davy and Big Apple, including whenever funding advance checks were received by the Rybak Firm on behalf of Big Apple. See Rybak Dep., 25:6-11, 73:2-6, 91:17-92:3, 94:14-15.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

140. Davy did not know how much money was collected by the Rybak Firm on behalf of Big Apple. See Davy Dep., 183:2-5.

**The Davy Defendants' Response:** The Davy Defendants admit the same.

141.     The Rybak Firm issued 23 checks to the St. Louis and entities he controls including, 1 Brooklyn, Lakaye, Precise, and Lawrence Chiropractic, related to the funds that it received in the name of Big Apple, which total more than $780,000.00. See Rybak Dep., Ex. 13, 86:2-99:2; Vanunu Decl., ¶_____.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

142.     Rybak would contact St. Louis to advise that a check was being issued for him. See Rybak Dep., 89:5-14.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

143.     St. Louis advised the Rybak Firm where checks would be distributed to for funds obtained on behalf of Big Apple. See Rybak Dep., 97:11-21.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

144.     Specifically, the Rybak Firm issued: (i) 17 checks to 1 Brooklyn totaling $691,457.44; (ii) one check to St. Louis for $6,049.22; (iii) two checks to Lakkaye totaling $50,555.01; (iv) one check to Lawrence Chiropractic for $2,670.15; and (v) two checks to Precise totaling $29,400.81. See Rybak Dep., Ex. 13; Vanunu Decl., ¶_____.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

145.    All Big Apple funds deposited into Rybak's IOLA account were disbursed without Davy's knowledge and Davy did not know where those funds went. See Davy Dep., 179:12-20.

**The Davy Defendants' Response:**  The Davy Defendants admit the same.

146.    Bank records relating to the St. Louis Defendants show that a significant portion of the more than $780,000.00 that they received from the Rybak Law Firm was quickly converted to cash. See Vanunu Decl., ¶ _____.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

147.    1 Brooklyn issued 16 checks totaling $145,600.00 to an individual named Jean Sauveur ("Sauveur") between July 2021 and January 2022. See Vanunu Decl., ¶ _____.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

148.    Precise issued 21 checks totaling $198,650.00 to Sauveur between of October 2021 and January 2022. See Vanunu Decl., ¶ _____.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

149.    Lakaye issued 22 checks to Sauveur, totaling $192,850.00 between July 2021 and January 2022. See Vanunu Decl., ¶ _____.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

150.     St. Louis issued 7 checks, through his personal account, to Sauveur, totaling $48,600.00, between July 2021 and October 2021. <u>See</u> Vanunu Decl., ¶ _____.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

151.     Each of the checks issued to Sauveur was for an amount under $10,000.00 and was cashed at a branch where the St. Louis Defendants bank. <u>See</u> Vanunu Decl., ¶ _____.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

152.     St. Louis, through 1 Brooklyn and Lawrence Chiropractic, also issued six separate checks to Big Apple that were endorsed by Davy and deposited into Big Apple's TD Bank account. 1 Brooklyn issued two checks, Check No. 1134 for $7,500.00 and Check No. 1165 for $7,500.00. Lawrence Chiropractic issued four checks, Check No. 1003 for $7,500.00, Check No. 1010 for $15,000.00, Check No. 1021 for $7,500.00, and Check No. 1052 for $4,883.00. <u>See</u> Vanunu Decl. _____; Davy Dep., Ex. 33, 235:8-25.

**The Davy Defendants' Response:**  The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement.  Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

153.     In addition, KLG issued two checks to Big Apple that were endorsed by Davy and deposited into Big Apple's TD Bank account. Specifically, Check No. 2724 for $23,518.40 and Check No. 3413 for $7,291.22. <u>See</u> Vanunu Decl. _____; Davy Dep., Ex. 33, 235:8-25.

**The Davy Defendants' Response:**  The Davy Defendants admit the same.

154.    When asked whether these payments were Davy's fee for the services as part of his agreement with St. Louis, Davy invoked the Fifth Amendment privilege against self-incrimination. See Davy Dep., 236:2-15, 237:22-240:16.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) The fact that Dr. Davy in an abundance of caution invoked his Fifth Amendment privilege against self-incrimination presents an evidentiary issue. Accordingly, the Davy Defendants do not respond to this statement other than to respectfully refer the Court to the specific question posed by Plaintiffs in response to which Dr. Davy so responded, and not Plaintiffs' summary of the same.

## V.    GEICO's Payments

155.    GEICO compiled a TIN Run setting forth the amount of payments that GEICO voluntarily made based on claims submitted or caused to be submitted through Defendant Big Apple Tax Identification Number 82-0995207 and Hourglass Tax Identification Number 81-1274883. See Asmus Decl. ¶___.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) This is an improper statement of alleged evidence to which no response is required.

156.    The TIN Run for the Davy PCs identified each of the payments GEICO issued to Big Apple in connection with the claims that were submitted or caused to be submitted to GEICO by the Defendants. See Asmus Decl. ¶___.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an

assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) This is an improper statement of alleged evidence to which no response is required.

157.    Based upon the TIN Run of Big Apple, GEICO voluntarily paid Big Apple $357,808.43 in reliance on Big Apple's billing. <u>See</u> Asmus Decl. ¶ ___

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) This is an improper statement of alleged evidence to which no response is required. However, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement to the extent that it is factual.

158.    Based upon the TIN Run of Hourglass, GEICO voluntarily paid Hourglass $123,424.70 in reliance on Hourglass's billing, for which it claims recovery in this action. <u>See</u> Asmus Decl. ¶___.

**The Davy Defendants' Response:** Section IV.B.7(b) of the Individual Practices of The Hon. Hector Gonzalez states that "[e]ach paragraph in the Local Rule 56.1 statement shall contain an assertion of a material undisputed fact, <u>not a description of evidence</u>." (Emphasis added.) This is an improper statement of alleged evidence to which no response is required. However, The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement to the extent that it is factual.

159.    GEICO paid $481,233.13 in reliance on the facially valid billing submitted using the name of the Davy PCs, reasonably believing that it had an obligation to do so. <u>See</u> Asmus Decl. ¶___.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement, to the extent that it is factual. However, GEICO's claim regarding its alleged "reasonable belief" is not factual, and requires no response.

160. GEICO's voluntary payments can be broken down as follows: (i) GEICO voluntarily paid $91,306.57 between July 1, 2021 and September 30, 2021; (ii) GEICO voluntarily paid $259,005.09 between October 1, 2021 and December 31, 2021; (iii) GEICO voluntarily paid $89,066.83 between January 1, 2022 and March 31, 2022; (iv) GEICO voluntarily paid $25,741.79 between April 1, 2022 and June 30, 2022; (v) GEICO voluntarily paid $4,002.11 between July 1, 2022 and September 30, 2022; (vi) GEICO voluntarily paid $9,318.33 between October 1, 2022 and December 31, 2022; and (vii) GEICO voluntarily paid $2,792.41 between January 1, 2023 and March 31, 2023. See Asmus Decl. ¶ _____.

**The Davy Defendants' Response:** The Davy Defendants lack knowledge or information sufficient to form a belief as to the truth of this statement. Therefore, this is not an undisputed fact, and Plaintiffs are put to their proof.

Dated: October 24, 2023
      Uniondale, New York

EISENBERG & CARTON

*/s/ Lloyd M. Eisenberg*
By:_____
    Lloyd M. Eisenberg
405 RXR Plaza
Uniondale, New York 11556
(516) 221-3700

Attorneys for Defendants Andrew Davy,
M.D., Big Apple Medical Services, P.C. and
Big Apple Medical P.C. doing business as
Hourglass Medical Services