UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY, and
GEICO CASUALTY COMPANY,

                              Plaintiffs,

**REPORT AND RECOMMENDATION**
22-CV-6158-HG-SJB

            -against-

ANDREW DAVY, M.D., BIG APPLE MEDICAL
SERVICES, P.C, BIG APPLE MEDICAL SERVICES,
JOHN DOE DEFENDANTS 1 THROUGH 10,
ERIC ST. LOUIS, 1 BROOKLYN CONSULTING
GROUP INC., PRECISE WELLCARE SERVICES INC.,
LAKAYE SOCIAL & HUMAN SERVICES, LLC,

                         Defendants.
---------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

      Plaintiffs Government Employees Insurance Company, GEICO Indemnity

Company, GEICO General Insurance Company, and GEICO Casualty Company

(collectively, "GEICO") commenced this action for fraud, unjust enrichment, RICO

violations, and a declaratory judgment, alleging that Defendants engaged in a scheme to

submit fraudulent charges for medically unnecessary healthcare services for covered

individuals under New York's no-fault insurance law.  (Compl. dated Oct. 12, 2022

("Compl."), Dkt. No. 1).  On March 8, 2023, GEICO filed its Amended Complaint, the

operative Complaint in this action, naming Defendants Eric St. Louis, 1 Brooklyn

Consulting Group, Inc., Precise Wellcare Services, Inc., and Lakaye Social & Human

Services, LLC (collectively, the "Defaulting Defendants").  (Am. Compl. dated Mar. 8,

2023 ("AC"), Dkt No. 26).  Though Defendants Andrew Davy, MD, Big Apple Medical

Services, P.C., and Big Apple Medical Services d/b/a Hourglass Medical Services filed an

answer, (Answer dated Mar. 22, 2023 ("Answer"), Dkt. No. 30), the Defaulting Defendants did not appear.  The Clerk of Court entered a default against them on May 18, 2023.  (Clerk's Entries of Default dated May 18, 2023 ("Entries of Default"), Dkt. Nos. 53–56).  GEICO subsequently moved for default judgment against the Defaulting Defendants solely on their common-law fraud claims.[1]  (Mot. for Default J. dated June 26, 2023 ("Mot. for Default J."), Dkt. No. 60; Mem. of Law in Supp. of Mot. for Default J. dated June 26, 2023 ("Mem. of Law"), attached to Mot. for Default J., Dkt. No. 60-19 at 1).  On July 7, 2023, Judge Hector Gonzalez referred the motion to the undersigned for a report and recommendation.  (Order Referring Mot. dated July 7, 2023).  For the reasons stated below, it is respectfully recommended that GEICO's motion for default judgment be granted with respect to the Defaulting Defendants.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Unless otherwise indicated, the following facts are drawn from GEICO's Amended Complaint.

GEICO, a Nebraska corporation with its principal place of business in Maryland, "underwrites automobile insurance in New York."  (AC ¶¶ 32, 44).  Under New York's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law § 5101, and its associated regulations, N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 11, § 65 *et seq.*, GEICO is required to provide Personal Injury Protection benefits ("no-fault benefits") to GEICO policyholders.  (AC ¶ 45).  No-fault benefits include up to $50,000 per insured

---

[1] Because GEICO only seeks default judgment as to the common-law fraud claims, all other claims against the Defaulting Defendants are deemed waived and are dismissed. *See Root Bros. Farms v. Big Big Produce, Inc.*, No. 21-CV-1962, 2022 WL 4586185, at *8 (E.D.N.Y. Aug. 2, 2022), *report and recommendation adopted*, 2022 WL 4586350, at *1 (Sept. 29, 2022).

person for "necessary expenses incurred for health care goods and services, including medical services." (*Id.* ¶ 46). An insured person can assign his or her rights to these no-fault benefits to healthcare providers, who then submit claims to GEICO to receive payment using claim forms, such as an NF-3 or HCFA-1500 form. (*Id.* ¶ 48). These forms contain a warning that the submission of false information or a fraudulent claim is a crime. (*Id.* ¶ 61).

Under the no-fault insurance law, a provider is not eligible for reimbursement if it fails to meet any of the applicable licensing requirements. (*Id.* ¶¶ 49–50 (citing N.Y.C.R.R. tit. 11, § 65-3.16(a)(12)). Among other things, these requirements prohibit individuals without a professional license from owning or controlling healthcare corporations, from deriving economic benefit from physician services, and from "paying or accepting kickbacks in exchange for patient referrals." (*Id.* ¶¶ 52–53). Providers that do not comply with licensing requirements are not eligible to collect no-fault benefits, and only licensed physicians may practice medicine in New York. (AC ¶ 56 (first citing *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 320 (2005); and then citing *Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 33 N.Y.3d 389 (2019))). Only a healthcare provider directly assigned no-fault benefits is eligible to bill for or collect from an insurer, (*id.* ¶ 57), and corporations cannot seek reimbursement for services provided by an independent contractor. (*Id.* ¶ 58).

Defendants 1 Brooklyn Consulting Group, Inc., Precise Wellcare Services, Inc., and Lakaye Social & Human Services, LLC are all New York corporations with their principal place of business in New York. (*Id.* ¶¶ 36–38). Defendant St. Louis is a citizen of Florida and is the owner and sole shareholder of 1 Brooklyn Consulting Group, Inc., Precise Wellcare Services, Inc., and Lakaye Social & Human Services, LLC. (*Id.* ¶ 39).

St. Louis is a manager and operator of healthcare offices but does not have a medical license. (*Id.* ¶ 8). GEICO alleges that the offices he owns hold themselves out to be clinics that "provide treatment to patients covered by No-Fault insurance, but are, in actuality, organized to supply convenient, one-stop shops for no-fault insurance fraud." (AC ¶ 8). The Defaulting Defendants, along with the other defendants, are alleged to be involved in schemes to defraud GEICO through New York's no-fault insurance system. (*Id.* ¶ 1).

GEICO alleges that the Defaulting Defendants ran a fraudulent scheme where unlicensed technicians would perform services at a large number of clinics and generate falsified reports to justify medically unnecessary services; Defendants would then send these falsified reports, documents, and bills to GEICO seeking reimbursement for the services. (*Id.* ¶ 11). GEICO alleges that the Defaulting Defendants and the John Doe Defendants "established illegal referral and kickback arrangements with the Clinics and their owners/managers" to ensure "a steady stream of patients." (*Id.* ¶ 12).

To effectuate this scheme, St. Louis entered into an agreement with Defendant Davy, a licensed physician, who, for a periodic payment, allowed St. Louis to use his name, license, signature, and the tax identification number of Big Apple Medical Services, P.C. and Big Apple Medical Services, P.C. d/b/a Hourglass Medical Services (the "Provider Defendants") in St. Louis's scheme. (*Id.* ¶ 13). Davy occasionally reviewed records provided by St. Louis but ceded all control over the Provider Defendants to St. Louis. (*Id.*). The Defaulting Defendants "unlawfully controlled" the Provider Defendants, using them as "a vehicle for submitting bills" to GEICO, and engaged in a scheme to "induce GEICO to pay charges submitted through [the Provider Defendants] that were not compensable under New York no-fault insurance laws." (AC

¶¶ 14, 223, 248).  GEICO alleges that together, the Defendants submitted or caused to be submitted "thousands of fraudulent no-fault insurance charges relating to medically unnecessary . . . services styled as primarily as [sic] extracorporeal shockwave therapy ('ESWT') as well as transcranial doppler testing ('TDT') and videonystagmus testing ('VNG')" through the Provider Defendants, thereby wrongfully obtaining hundreds of thousands of dollars from GEICO.  (*Id.* ¶¶ 1, 4).

GEICO brought this action on October 12, 2022, and filed its Amended Complaint naming the Defaulting Defendants on March 8, 2023.  (Compl.; AC).  GEICO's Amended Complaint contains ten causes of action against the Defaulting Defendants, including under RICO, and for common-law fraud and unjust enrichment under New York law.  (AC ¶¶ 191–257).

The Defaulting Defendants each failed to appear.[2]  All were properly served with the summons and Amended Complaint.  (Summons Returned Executed for 1 Brooklyn Consulting Group, Inc. dated Mar. 23, 2023, Dkt. No. 31; Summons Returned Executed for Lakaye Social & Human Services, LLC dated Mar. 23, 2023, Dkt. No. 32; Aff. of Service for Precise Wellcare Services, Inc. dated Mar. 28, 2023, Dkt. No. 38-1; Summons Returned Executed for Eric St. Louis dated Apr. 7, 2023, Dkt. No. 43).  Consistent with Local Civil Rule 55.2, GEICO mailed the motion for default judgment and supporting papers to Defendant St. Louis's residential address and the last known business addresses of 1 Brooklyn Consulting Group, Inc., Lakaye Social and Human Services,

---

[2] The Amended Complaint named seventeen defendants: Andrew Davy, M.D., the Provider Defendants, the Defaulting Defendants, and John Doe Defendants "1" through "10."  Davy and the Provider Defendants have appeared in the litigation.  (*See* Answer dated Nov. 30, 2022, Dkt. No. 19).  The John Doe Defendants have not been identified, and GEICO does not seek recovery from them in its motion for default judgment.  (*See* Mot. for Default J. at 1).

LLC, and Precise Wellcare Services, Inc.  (Aff. of Service by Mail of Mot. for Default J. dated June 27, 2023 ("Aff. of Service by Mail"), Dkt. No. 61).

The Clerk of Court entered defaults as to each of the Defaulting Defendants on May 18, 2023, (Entries of Default), and GEICO filed its motion for default judgment on June 26, 2023.  (Mot. for Default J.).  In the instant motion, GEICO only seeks default as to the common-law fraud claims.  (*See* Mem. of Law at 9).  GEICO seeks $481,233.13 in damages and $69,654.04 in pre-judgment interest.  (*Id.* at 9, 20; Decl. of Michael Vanunu dated June 26, 2023 ("Vanunu Decl."), attached to Mot. for Default J., Dkt. No. 60-1 ¶¶ 8, 16).  For the reasons stated below, the Court respectfully recommends that the motion be granted against the Defaulting Defendants as to the common-law fraud claims, and that the remaining claims against the Defaulting Defendants be dismissed.

<u>DISCUSSION</u>

I.      <u>Entry of Default Judgment</u>

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant.  *Id.* R. 55(b)(2).  The Clerk of Court entered default against each of the Defaulting Defendants on May 18, 2023.  (*See* Entries of Default).

The next question, before reaching liability or damages, is whether the Defaulting Defendants' conduct is sufficient to warrant entry of a default judgment.  In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001).  These factors are "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, the Defaulting Defendants' failure to respond to the Complaint demonstrates their default was willful.  *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that the defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff default judgment against them).  All were properly served with the summons and Amended Complaint, and therefore had sufficient notice of the present litigation.  *Supra* at pp. 5.  The motion for default judgment was also served via mail to the Defaulting Defendants in accordance with Local Civil Rule 55.2, *i.e.*, at their last known business addresses and/or home addresses.  (*See* Aff. of Service by Mail).  Notwithstanding this notice and service, the Defaulting Defendants did not respond to the Amended Complaint, did not appear, and have not in any way attempted to defend themselves, thus willfully defaulting.  *See, e.g.*, *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs'

7

motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Second, the Court cannot conclude there is any meritorious defense to Plaintiffs' allegations because the Defaulting Defendants did not appear, and no defense has been presented to the Court. *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

Third, Plaintiffs would be prejudiced if the motion for default judgment is denied, "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Order (Jan. 26, 2009); *Sola Franchise Corp.*, 2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors weigh in favor of the entry of default judgment.

While the four Defaulting Defendants have defaulted, Davy and the Provider Defendants have appeared, filing an answer on November 30, 2022. (Answer). Under Federal Rule of Civil Procedure 54(b), "when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines there is no just reason for delay." "While '[t]here are no fixed criteria for invoking this rule,' courts typically consider whether the 'adjudicated claims are independent from the remaining claims' and whether a 'defendant's solvency or ability to pay a judgment in the future is in question.'" *Gov't*

*Emps. Ins. Co. v. Scheer*, No. 13-CV-4039, 2014 WL 4966150, at *3 (E.D.N.Y. Aug. 18, 2014) (quoting *Mitchell v. Lyons Pro. Servs., Inc.*, 727 F. Supp. 2d 116, 119–20 (E.D.N.Y. 2019)), *report and recommendation adopted*, 2014 WL 4966137, at *1 (Sept. 30, 2014). "[E]ntering such judgment is contrary to settled case law only when true joint liability is at issue, 'such that, as a matter of law, no one defendant may be liable unless all defendants are liable.'" *Id.* (quoting *Friedman v. Lawrence*, No. 90-CV-5584, 1991 WL 206308, at *2 (S.D.N.Y. Oct. 2, 1991)).

Here, there is not true joint liability between the Defaulting Defendants and Davy and the Provider Defendants. Defendant Davy represented to the Court that he was willing to stipulate to a declaratory judgment establishing that GEICO is not required to pay the allegedly fraudulent unpaid insurance claims. (Defs.' Letter Resp. in Opp'n to Pls.' Letter Mot. for Pre-Mot. Conference dated Oct. 31, 2023 ("Defs.' Opp'n"), Dkt. No. 63 at 1). In that same letter, Davy acknowledged that GEICO was improperly billed and that he was "utilized as a pawn by the mastermind of th[e] scheme, Defendant Eric St. Louis." (*Id.*). Having admitted to being a part of the scheme, the only issue left for a jury to decide is whether Davy had the requisite scienter to support the fraud claims. (*Id.* at 2). It is possible, as a matter of law, that a jury could find Davy lacked the requisite scienter (and therefore not liable for fraud), even if the Court enters judgment against the Defaulting Defendants. To find the Defaulting Defendants liable and enter judgment against them, the Court is only required to find what Davy has already admitted: that the Defaulting Defendants engaged in fraud. Doing so would not impair Davy's ability to litigate scienter or result in an automatic determination that Davy was liable for the fraud of the Defaulting Defendants. Indeed, the litigating defendants have

not opposed the motion for default judgment and have not identified any prejudice to them from entering judgment against the Defaulting Defendants.

Moreover, the Amended Complaint has additional discrete allegations against the Defaulting Defendants, and GEICO has alleged that the Defaulting Defendants may be unable to pay any judgment due to solvency issues; therefore, it seeks a prompt default judgment. (*See* Mem. of Law at 18). Because there is no true joint liability and because the Defaulting Defendants' ability to pay a judgment is in question, the Court find there is no just reason for delay and respectfully recommends judgment be entered as to the Defaulting Defendants even while GEICO's claims against Davy and the other litigating defendants are pending. *See Scheer*, 2014 WL 4966150, at *4 ("Although the defaulting defendants in this case are allegedly participants in a scheme with the appearing defendants, the Complaint makes specific allegations particular to the [defaulting defendants]" and "state[s] that there is a danger that [plaintiffs'] ability to recover from the defaulting defendants may be hampered if entry of judgment is delayed.").

Having found that entries of judgment against the Defaulting Defendants is appropriate, the Court now turns to the liability imposed, damages, and other relief awarded.

II.     Liability

A.     Common-Law Fraud

GEICO alleges that it is entitled to default judgment on its common-law fraud claims. (Mem. of Law at 9–15). In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of

liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B & M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Laby's Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (3d ed. 2017). The Court must therefore determine whether the facts alleged in the Amended Complaint are sufficient to establish liability of the Defaulting Defendants.

"Under New York law, a plaintiff asserting a claim of common law fraud must plausibly allege: '(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff.'" *Gov't Emps. Ins. Co. v. ALP Supply, Inc.*, No. 22-CV-79, 2023 WL 5846680, at *5 (E.D.N.Y. Sept. 11, 2023) (quoting *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)), *report and recommendation adopted*, Order (Sept. 28, 2023). "Additionally, in federal court, '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Id.* (alteration in original) (quoting Fed. R. Civ. P. 9(b)). Therefore, a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (quotations omitted).

1.   <u>Material Misrepresentation or Omission of Fact and Rule 9(b)</u>

GEICO has described in detail how the Defaulting Defendants ran a scheme pursuant to which they submitted charges for reimbursements for which they were not eligible.  GEICO alleges that Defaulting Defendants submitted or caused the submission of thousands of NF-3 forms using the names and tax identification numbers of the Provider Defendants, which represented that the services were provided by Davy, which they were not.  (AC ¶ 174–75).  GEICO further alleges that the Defaulting Defendants concealed that the Provider Defendants were under the control of the Defaulting Defendants, (*id.* ¶ 178), and that the services were performed by unlicensed independent contractors.  (*Id.* ¶ 179).  These forms also omitted that the services were provided pursuant to illegal kickback and referral arrangements.  (*Id.* ¶¶ 175, 178).

GEICO attached a chart listing the bills that the Defaulting Defendants caused to be submitted to GEICO, along with claim numbers and when the claim was received, as an exhibit.  (Chart of Fraudulent Claims ("Claims Chart"), attached as Ex. 1 to AC, Dkt. No. 26-2; *see also* Tax Identification Payment Runs ("TIN Runs"), attached as Exs. 1–2 to Decl. of Kathleen Asmus ("Asmus Decl."), attached as Ex. 5 to Mot. for Default J., Dkt. No. 60-6 at 6–14).  The spreadsheets for each provider include the date and dollar amount claimed for each bill.  (TIN Runs).

The Complaint alleges that each and every one of these bills was submitted by the Defaulting Defendants through the Provider Defendants, each sought reimbursement prohibited under the no-fault law, and each contained one or more false statements. The Claims Charts—which identify claims (and thereby the fraudulent statements) made by each of the Defaulting Defendants and when those claims were made—are sufficient to meet the standard of Rule 9(b).  *See, e.g.*, *Gov't Emps. Ins. Co. v. Badia*, No. 13-CV-

1720, 2015 WL 1258218, at *15 (E.D.N.Y. Mar. 18, 2015) ("Plaintiffs' very detailed chart identifies Baneur as the speaker of the fraudulent statements and states when and where each statement was made by listing Baneur's claim submission dates, claim numbers and claim-demand amounts."); *Gov't Emps. Ins. Co. v. Alrof, Inc.*, No. 11-CV-4028, 2013 WL 9600668, at *5 (E.D.N.Y. July 19, 2013) ("Plaintiffs set forth examples and described in detail how the Retail Defendants submitted charges for items more expensive than those actually dispensed, if dispensed at all.  Plaintiffs have also supplied a schedule detailing when the Retail Defendants' claims were paid.  Accordingly, Plaintiffs have pled the fraud with sufficient particularity[.]" (citations omitted)), *report and recommendation adopted sub nom. Gov't Emps. Ins. Co. v. Park Slope Med. & Surgical Supply, Inc.*, 2013 WL 5209415, at *1, *6 (Sept. 13, 2013); *Allstate Ins. Co. v. Lyons (Lyons I)*, 843 F. Supp. 2d 358, 373 (E.D.N.Y. 2012) ("Allstate attaches to its Complaint a series of charts that include each of the charges submitted by the defendants that it believes were fraudulent.  The charts detail the entity that submitted each claim, as well as the corresponding claim number, the year Allstate paid the claim, and the amount paid by Allstate.  Such information clearly directs defendants to the specific misrepresentations Allstate is alleging.  Under the circumstances, the specificity requirement of 9(b) requires no more[.]" (citation omitted)).

    2. <u>Knowledge and Intent to Defraud</u>

Though, under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a plaintiff must still "allege facts 'that give rise to a strong inference of fraudulent intent.'" *Loreley Fin.*, 797 F.3d at 171 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d. Cir. 2006)).  This strong inference of fraud "may be established either (a) by alleging facts to show that

defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290–91 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

GEICO alleges that the Defaulting Defendants knew that the claims they submitted to GEICO were fraudulent and that doing so was part of an intentional scheme to defraud it. (AC ¶ 9 ("[The Defaulting] Defendants associated with certain John Doe Defendants, to engineer a fraudulent scheme[.]"); *id.* ¶ 11 ("The [Defaulting] Defendants and the John Doe Defendants seized on these changes in the Fee Schedule (or lack thereof) by concocting a fraudulent treatment and billing scheme[.]"); *id.* ¶ 28 ("[T]he Defendants, at all relevant times, have known that: (i) the name, signature, and medical license of Davy were fraudulently used to bill for and collect money from GEICO for Fraudulent Services[.]")).

Further, GEICO alleges that the Defaulting Defendants were motivated to "induce GEICO to pay charges . . . that were not compensable under New York no-fault insurance laws," (AC ¶ 223, 248), and had the opportunity to receive reimbursements from GEICO by submitting fraudulent claims (*See id.* ¶ 174 ("To support their fraudulent charges, the Defendants systematically submitted or caused to be submitted to GEICO thousands of NF-3 forms, AOBs, and medical reports/records . . . seeking payment for the Fraudulent Services for which the Defendants were not entitled to receive payment."); *id.* ¶ 177 ("To induce GEICO to promptly pay the fraudulent charges for the Fraudulent Services, Defendants systematically made material misrepresentations, concealed their fraud and the underlying fraudulent scheme, and went to great lengths to accomplish this concealment.")).

14

These allegations are sufficient to establish the *mens rea* elements of common-law fraud. *See Gov't Emps. Ins. Co. v. Elmwood Park Med. Grp., P.C.*, No. 21-CV-617, 2022 WL 772737, at *8 (E.D.N.Y. Feb. 23, 2022) (finding GEICO's allegations that Defaulting Defendants knew that the claims they submitted were fraudulent, that the submissions were made as part of an intentional scheme to defraud, and that they had motive and opportunity to receive payments they were not entitled to by submitting fraudulent claims sufficient to establish the second and third elements of common-law fraud), *report and recommendation adopted*, 2022 WL 768360, at *1 (Mar. 14, 2022); *see also Gov't Emps. Ins. Co. v. Li-Elle Serv., Inc.*, No. 12-CV-2157, 2013 WL 829302, at *7 (E.D.N.Y. Feb. 11, 2013) ("Plaintiffs allege that Defendants not only knew that they were submitting fraudulent claims to GEICO, but that they did so intentionally in a scheme for profit. This gives rise to a strong inference of fraudulent intent and is sufficient to establish the scienter requirement." (citation omitted)), *report and recommendation adopted as modified*, 2013 WL 829274, at *1 (Mar. 6, 2013).

     3.  <u>Reasonable Reliance and Damage</u>

"A plaintiff's reliance on intentionally fraudulent statements is reasonable without further investigation when 'matters are held to be peculiarly within defendant's knowledge . . . as [plaintiff] has no independent means of ascertaining the truth.'" *Allstate Ins. Co. v. Smirnov*, No. 12-CV-1246, 2013 WL 5407224, at *7 (E.D.N.Y. Aug. 21, 2013) (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997)), *report and recommendation adopted*, Mem. and Order (Sept. 25, 2013). And in insurance fraud cases, "[i]nsurance companies are permitted to rely on 'facially valid' insurance reimbursement claims." *Gov't Emps. Ins. Co. v. Erlikh*, No. 16-CV-7120, 2019 WL 1487576, at *7 (E.D.N.Y. Feb. 28, 2019), *report and recommendation*

*adopted*, Order (Mar. 31, 2019).  The Amended Complaint explains GEICO's statutory and contractual duty to "promptly and fairly process claims within 30 days" and alleges the fraudulent claims submitted by the Defaulting Defendants were "facially valid . . . and . . .cause[d] GEICO to rely upon them."  (AC ¶ 180).  Based on these facially valid documents, GEICO alleges it paid the Defaulting Defendants a total of $481,233.13 through the Provider Defendants in claims that were not reimbursable under the no-fault law.  (Asmus Decl. ¶ 7, Mem. of Law at 5).  These allegations, taken as true on default, satisfy the fourth and fifth elements of common-law fraud by showing a reasonable reliance on Defaulting Defendants' misrepresentations, which caused injury to GEICO.  *See, e.g.*, *Erlikh*, 2019 WL 1487576, at *7 ("Given the lengths the Defaulting Defendants took to conceal the fraudulent bills, the existence of the 30-day requirement, and the facially valid bills, it was reasonable for GEICO to rely on the bills containing the purported misstatements and pay the Defaulting Defendants." (internal citation omitted)); *see also Elmwood Park Med. Grp., P.C.*, 2022 WL 772737, at *8 (finding Plaintiff sufficiently alleged the fourth and fifth elements of common-law fraud where Plaintiff alleged that Defaulting Defendants falsely represented their eligibility to receive reimbursements in its submissions and that Plaintiff relied on the facially valid submissions to pay the Defaulting Defendants).

GEICO, therefore, has sufficiently alleged each of the elements for a claim of common-law fraud against the Defaulting Defendants and is therefore entitled to a judgment of liability on this claim.  *See Allstate Ins. Co. v. Abramov*, No. 16-CV-1465, 2020 WL 1172697, at *11 (E.D.N.Y. Feb. 21, 2020), *report and recommendation adopted*, 2020 WL 1166498, at *1 (Mar. 11, 2020).

B.   <u>Joint and Several Liability</u>

GEICO seeks to hold the Defaulting Defendants jointly and severally liable. "Under New York law, where defendants acted jointly and/or concurrently to produce a single injury, those defendants must be held jointly and severally liable for all of the harm resulting from their actions." *Gov't Emps. Ins. Co. v. Infinity Health Prods., Ltd.*, No. 10-CV-5611, 2012 WL 1427796, at \*10 (E.D.N.Y. Apr. 6, 2012), *report and recommendation adopted*, 2012 WL 1432213, at \*1 (Apr. 25, 2012). "Joint and several liability may . . . be imposed where a plaintiff demonstrates that the harm it suffered as a result of the conduct of two or more defendants is 'indivisible.'" *Gov't Emps. Ins. Co. v. Spectrum Neurology Grp., LLC*, No. 14-CV-5277, 2016 WL 11395017, at \*6 (E.D.N.Y. Feb. 17, 2016) (citing *Infinity Health Prods.*, 2012 WL 1427796, at \*11), *report and recommendation adopted*, 2016 WL 1071099, at \*1 (Mar. 18, 2016); *see also Erlikh*, 2019 WL 1487576, at \*8.

By operating and controlling the clinics where fraudulently incorporated providers submitted fraudulent bills to GEICO, the Defaulting Defendants collectively caused the thousands of bills that are subject to this action to be submitted. (AC ¶ 174 ("Defendants systematically submitted or caused to be submitted to GEICO thousands of NF-3 forms, AOBs, and medical reports/records using the name of Big Apple PC and both the Big Apple PC and Hourglass tax identification numbers seeking payment for the Fraudulent Services for which the Defendants were not entitled to payment.")).

Because responsibility for the documents containing the fraudulent statements—each bill submitted to GEICO—cannot be allocated between the Defaulting Defendants, the harm GEICO suffered from each bill is indivisible. Where courts have found that an injury is divisible, there has been a clear allocation of fault between each defaulting defendant. *See, e.g.*, *Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C.*, No. 15-CV-3670,

2017 WL 1133282, at *15 (E.D.N.Y. Feb. 21, 2017) ("Plaintiffs have not established that the injury they sustained by reimbursing each corporate Defaulting Defendant was indivisible.  To the contrary, . . . Plaintiffs' submissions identify claims submitted by each Defaulting Defendant, indicate which defendant is responsible for each claim, and list the amounts paid to each Defendant."), *report and recommendation adopted*, 2017 WL 1131901, at *1 (Mar. 24, 2017).  That situation is not present here, and it is therefore appropriate to impose joint and several liability on the Defaulting Defendants.  *See, e.g.*, *Allstate Ins. Co. v. Williams (Williams I)*, No. 13-CV-2893, 2014 WL 6900121, at *10 (E.D.N.Y. Dec. 5, 2014) ("The Individual Defendants and PC Defendants participated in and caused the submission of fraudulent bills to Allstate, and attempted to conceal the fraud, thus all contributing to a single indivisible injury to Allstate.  Therefore, the Individual Defendants and their respective medical professional corporations should be held jointly and severally liable for the state law claims.") (adopting report and recommendation); *Gov't Emps. Ins. Co. v. IAV Med. Supply, Inc.*, No. 11-CV-4261, 2013 WL 764735, at *9 (E.D.N.Y. Feb. 8, 2013) (finding defendants in each discrete scheme were jointly and severally liable), *report and recommendation adopted*, 2013 WL 765190, at *1 (Feb. 28, 2013); *Travelers Indem. Co. v. Liberty Med. Imaging Assocs., P.C.*, No. 07-CV-2519, 2009 WL 962789, at *5 (E.D.N.Y. Mar. 15, 2009) (same), *report and recommendation adopted in relevant part*, 2009 WL 962788, at *2 (Apr. 8, 2009).

III.     Damages

A.   Fraud Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Greyhound Exhibitgroup*, 973 F.2d at 158.  "Although the default establishes a defendant's liability,

unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations and citations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases). Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages, "as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Gilbert*, No. 20-CV-1441, 2022 WL 344270, at *3 (N.D.N.Y. Feb. 4, 2022) ("A hearing is not necessary where the record contains detailed affidavits and documentary evidence that enables the court to evaluate the proposed sum and determine an award of damages." (citing *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993))).

GEICO has submitted declarations from Michael Vanunu, counsel for GEICO; Kathleen Asmus, an employee of GEICO; and other supporting documents to demonstrate its precise damages. (Vanunu Decl.; Asmus Decl.; Claims Chart; TIN

Runs).  The Defaulting Defendants have not submitted any response or opposition to these filings.

GEICO seeks damages in an amount equal to the payments it has made to the Defaulting Defendants.  (Vanunu Decl. ¶ 8).  GEICO's fraud claim is premised on the allegation—accepted as true on default—that each bill submitted contained a misstatement or omission.  (*See* AC ¶¶ 221, 246).  And as a result, the entirety of the amount sought from and paid by GEICO was reimbursement prohibited under the no-fault law.  (*See id*. ¶¶ 1, 180, 223–24, 248–49).  Under such a fraud theory, where each bill constitutes a fraudulent claim, GEICO is entitled to damages in the entire amount it paid to the Defaulting Defendants.  *See* Restatement (Second) of Torts § 525 (Am. L. Inst. 1977) ("One who fraudulently makes a misrepresentation of fact . . . for the purpose of inducing another to act . . . is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."); *see, e.g.*, *Allstate Ins. Co. v. Williams (Williams II)*, No. 13-CV-2893, 2015 WL 5560543, at *7 (E.D.N.Y. Aug. 28, 2015) (describing how each bill listed in Allstate's spreadsheets reflects "payment for each allegedly fraudulent claim"), *report and recommendation adopted sub nom. Allstate Ins. Co. v. Dublin*, 2015 WL 5560546, at *1 (Sept. 21, 2015); *Chubb & Son Inc. v. Kelleher*, No. 92-CV-4484, 2010 WL 5978913, at *6–*7 (E.D.N.Y. Oct. 22, 2010) (recommending an award of damages for the entirety of claims submitted for reimbursement under RICO and common-law fraud), *report and recommendation adopted*, 2011 WL 839553, at *1 (Mar. 7, 2011).

GEICO has submitted records—in the form of spreadsheets—of the payments made to the Provider Defendants "in connection with the claims that were submitted or caused to be submitted by the Defaulting Defendants."  (Asmus Decl. ¶ 5; *see also* TIN

Run; Claims Chart).  These records were generated using "GEICO's earnings reporting system," which also generates IRS Forms 1099-MISC, and which allow GEICO to track payments made to each payee using its tax identification number.  (Asmus Decl. ¶ 4). GEICO's method of compilation is a reliable means to determine damages.  *See, e.g.*, *Gov't Emps. Ins. Co. v. Armengol*, No. 20-CV-6052, 2022 WL 432320, at *9 (E.D.N.Y. Jan. 19, 2022) (finding the same method reliable), *report and recommendation adopted*, 2022 WL 426163, at *1 (Feb. 11, 2022); *see also Erlikh*, 2019 WL 1487576, at *9 (same).

Therefore, the Court respectfully recommends that GEICO be awarded a judgment against the Defaulting Defendants for $481,233.13.[3]

B. Pre-Judgment Interest

GEICO seeks pre-judgment interest at a rate of 9% per year on its fraud damages. (Vanunu Decl. ¶ 13).  "In diversity cases, the award of prejudgment interest is a substantive issue, governed . . . by New York law."  *IAV Med. Supply, Inc.*, 2013 WL 764735, at *8.  New York law provides for pre-judgment interest on fraud claims, *id.*, and dictates that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed," N.Y. C.P.L.R. § 5001(b).  In the insurance fraud context, however, "prejudgment interest accrues from the date the insurance company makes payment."  *IAV Med. Supply, Inc.*, 2013 WL 764735, at *9 (quotations omitted).

In its motion, GEICO requests less interest than what New York law provides; it requests that the Court calculate interest "from the first day following the quarter in

---

[3] GEICO's Amended Complaint also seeks an award of punitive damages.  (*See, e.g.*, AC ¶¶ 225–26, 250–51).  But the motion for default judgment does not seek such relief.

which the payments were made by GEICO to the Defaulting Defendants[.]"  (Mem. of Law at 19).  The Court recommends that GEICO be awarded pre-judgment interest at 9% per year, beginning on the first day of the quarter following GEICO's payments through the date of the entry of judgment.[4]

---

[4] Courts in this district have typically granted pre-judgment interest beginning on the first day of the year following GEICO's payments through the date of entry.  *See Armengol*, 2022 WL 432320, at *10; *see also Erlikh*, 2019 WL 1487576, at *10 ("The Court recommends that GEICO be awarded prejudgment interest at 9% per year, beginning on the first day of the year following GEICO's payments through the date of the entry of judgment.").  However, granting pre-judgment interest beginning on the first day of the following quarter is permissible as "prejudgment interest accrues from the date the insurance company makes payment."  *IAV Med. Supply, Inc.*, 2013 WL 764735, at *9 (quotations omitted).

The Court recommends that the 9% per year interest rate be awarded on the following amounts, from the dates indicated until the date that judgment is entered:[5]

| Big Apple Medical Services, P.C. | | | |
|---|---|---|---|
| Amount Paid | Billing Period | Interest Commencement Date | Per Diem Interest |
| $67,485.84 | 8/10/21-9/30/21 | 10/1/2021 | $16.64 |
| $170,580.54 | 10/1/21-12/31/21 | 1/1/2022 | $42.06 |
| $88,366.44 | 1/1/22-3/31/22 | 4/1/2022 | $21.79 |
| $23,283.05 | 4/1/22-6/30/22 | 7/1/2022 | $5.74 |
| $2,530.82 | 7/1/22-9/30/22 | 10/1/2022 | $0.62 |
| $3,827.29 | 10/1/22-12/31/22 | 1/1/2023 | $0.94 |
| $1,734.45 | 1/1/23-3/31/23 | 4/1/2023 | $0.43 |

| Big Apple Medical Services, P.C., d/b/a Hourglass Medical Services | | | |
|---|---|---|---|
| Amount Paid | Billing Period | Interest Commencement Date | Per Diem Interest |
| $23,820.73 | 7/16/2021-9/30/2021 | 10/1/2021 | $5.87 |
| $88,424.55 | 10/1/2021 - 12/31/2021 | 1/1/2022 | $21.80 |
| $700.39 | 1/1/22-3/31/22 | 4/1/2022 | $0.17 |
| $2,458.74 | 4/1/22-6/30/22 | 7/1/2022 | $0.60 |
| $1,471.29 | 7/1/22-9/30/22 | 10/1/2022 | $0.36 |
| $5,491.04 | 10/1/22-12/31/22 | 1/1/2023 | $1.35 |
| $1,057.96 | 1/1/23-3/31/23 | 4/1/2023 | $0.26 |

---

[5] The amounts in these tables come from the TIN Runs, attached to the Asmus Declaration as Exhibits 1 and 2. Each table refers to one of the Provider Defendants, which is how GEICO alleges the Defaulting Defendants received the fraudulent payments. GEICO's calculations combine the amounts paid to both Provider Defendants. (Vanunu Decl. ¶ 15). However, typically, pre-judgment interest is calculated by provider, not in the aggregate. *See Armengol*, 2022 WL 432320, at *10; *see also Erlikh*, 2019 WL 1487576, at *11. It also appears that GEICO's calculations use compounding interest; as an example, GEICO's table lists the "Total Paid to the Davy PCs" for "[p]ayments through December 31, 2022" as $478,440.72. It then uses this number, which includes payments from previous quarters, to calculate the interest. GEICO's calculations do not provide per diem interest rates, which the Court needs to correctly award pre-judgment interest. Accordingly, the Court took the data from the TIN Runs, broke it up quarterly as GEICO requested, and calculated the per diem interest rate, and did not compound interest. No legal justification for compounding was provided by GEICO in its briefing.

CONCLUSION

For the reasons stated above, the Court respectfully recommends that GEICO's motion for default judgment be granted with respect to the Defaulting Defendants—Eric St. Louis, 1 Brooklyn Consulting Group, Inc., Precise Wellcare Services, Inc., and Lakaye Social & Human Services, LLC—and that judgment be entered against them jointly and severally for $481,233.13, in addition to an award of pre-judgment interest at a rate of 9% per year, to be calculated by the Clerk of Court from the dates indicated in the tables above until the date judgment is entered.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

GEICO is directed to serve a copy of this Report and Recommendation on the Defaulting Defendants and file proof of such service on the record.


                                        SO ORDERED.

                                        /s/Sanket J. Bulsara  2/16/2024
                                        SANKET J. BULSARA
                                        United States Magistrate Judge

Brooklyn, New York

24