UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
GOVERNMENT EMPLOYEES INSURANCE          :
COMPANY, GEICO INDEMNITY COMPANY,       :
GEICO GENERAL INSURANCE COMPANY, and    :
GEICO CASUALTY COMPANY,                 :          REPORT AND
                                        :          RECOMMENDATION
                        Plaintiffs,     :
                                        :          22-CV-6158 (HG)(MMH)
        -against-                       :
                                        :
ANDREW DAVY, BIG APPLE MEDICAL          :
SERVICES, P.C., and BIG APPLE MEDICAL   :
SERVICES d/b/a HOURGLASS MEDICAL        :
SERVICES,                               :
                                        :
                        Defendants.     :
------------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company,

GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO"

or "Plaintiffs") sued Defendants Andrew Davy, Big Apple Medical Services, P.C. ("Big

Apple") and Big Apple Medical Services d/b/a Hourglass ("Hourglass") (with Big Apple,

collectively the "Davy PCs"), alleging violations of the Racketeer Influenced and Corrupt

Organizations Act (the "RICO Act"), 18 U.S.C. §§ 1962(c) and (d), and common law fraud

and unjust enrichment claims. (*See generally* Am. Compl., ECF No. 26.)[1]  Before the Court

is Plaintiffs' motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2).

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. ___")
and pagination "___ of ___" in the ECF header unless otherwise noted.  Citations to the Local
Civil Rules are to the Rules effective July 1, 2024, the operative rules when Plaintiffs filed the
motion.

(*See generally* Mot., ECF No. 88.)[2]  The Honorable Hector Gonzalez referred the motion for report and recommendation.  For the reasons set forth below, the Court respectfully recommends that Plaintiffs' motion for default judgment should be **granted**, with damages awarded as set forth herein.

## I.    BACKGROUND

### A.    Facts

The following facts are taken from the Amended Complaint, whose well-pleaded allegations are assumed to be true, and the uncontroverted documentary evidence submitted in support of the motion.  *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).   In sum, GEICO alleges that Defendants participated in a fraudulent insurance scheme by falsely representing material information to collect benefits under New York's "no-fault" insurance laws.

### 1.    New York's No-Fault Insurance Laws

In New York, car insurers are required to provide personal injury benefits (*i.e.*, "no-fault benefits") to individuals who claimed to have been involved in automobile accidents in New York and were eligible for coverage under no-fault insurance policies issued by GEICO

---

[2] The Motion includes the Declaration of Michael Vanunu (ECF No. 88-1) ("Vanunu Decl."); the Amended Complaint (ECF No. 88-2); certificates of default (ECF No.  88-3); a proposed judgment (ECF No. 88-4); the Declaration of Kathleen Asmus and its five exhibits (ECF No. 88-5) ("Asmus Decl."); a pre-judgment interest chart (ECF No. 88-6); a report pursuant to the Servicemembers Civil Relief Act (ECF No. 88-7); Plaintiffs' memorandum of law (ECF No. 88-8) ("Pls.' Mem."); and the Supplemental Declaration of Michael Vanunu (ECF No. 92) ("Vanunu Suppl. Decl.") and its three exhibits (ECF Nos. 92-1 to 92-3).  The Court finds that the motion papers comply with the Local Civil Rules.  *See Bonilla v. Avery Cuisine LLC*, No. 23-CV-8320 (NJC)(JMW), 2025 WL 745906, at *3 (E.D.N.Y. Jan. 15, 2025) (listing similar submissions as compliant with the Local Civil Rules), *adopted by* 2025 WL 559650 (E.D.N.Y. Feb. 20, 2025).

("Insureds").  (Am. Compl., ECF No. 26 ¶ 45.)  Claims for no-fault benefits are governed by a specific fee schedule and can result in up to $50,000 per insured for medically necessary expenses.  (*See id.* ¶¶ 46, 59.)  An insured can assign his/her right to no-fault benefits to health care goods and service providers in exchange for those services.  (*Id.* ¶ 47.)  Healthcare service providers that do not comply with state or city licensing requirements are ineligible to collect no-fault benefits.  (*Id.* ¶¶ 49–50 (citing 11 N.Y.C.R.R. § 65-3.16(a)(12).)  Further, the relevant laws prohibit licensed providers from paying or accepting kickbacks for referrals.  (*See id.* ¶ 53 (citing N.Y. Educ. Law §§ 6509-a, 6530(18) & 6531).)  Only actual health care providers in possession of a direct assignment of benefits are entitled to bill for and collect no-fault benefits. (*Id.* ¶¶ 57–58 (citing 11 N.Y.C.R.R. §§ 65-3.11 and N.Y. Ins. Law § 5102(a).)  Claims for no-fault benefits are governed by the New York Workers' Compensation Fee Schedule (the "NY Fee Schedule").  (*Id.* ¶ 59.)  When a healthcare services provider submits a claim for no-fault benefits using the current procedural terminology ("CPT") codes set forth in the NY Fee Schedule, it represents that: (i) the service described by the specific CPT code was performed on the patient; (ii) the service described by the specific CPT code was performed in a competent manner and in accordance with applicable laws and regulations; (iii) the service described by the specific CPT code was reasonable and medically necessary; and (iv) the service and the attendant fee were not excessive.  (*Id.* ¶ 60.)

## 2. The Alleged Fraudulent Scheme

Plaintiffs are Nebraska corporations with their principal places of business in Maryland and are authorized to conduct business and underwrite automobile insurance policies in New York.  (*Id.* ¶ 32.)  Davy, a citizen of New York, is a pain management doctor who became licensed to practice medicine in New York in 1992.  (*Id.* ¶¶ 33, 62.)  Big Apple is a New York

professional corporation with its principal place of business in New York, and Hourglass is the assumed name for Big Apple with its own tax identification number ("TIN"). (*Id.* ¶¶ 34–35.)

In 2021, Eric St. Louis, the owner of 1 Brooklyn Consulting Group Inc., Precise Wellcare Services, Inc., and Lakaye Social and Human Services L.L.C. (collectively, the "St. Louis Entities"), recruited Davy to participate in an insurance fraud scheme to bill GEICO millions of dollars for medically unnecessary, experimental, and otherwise non-reimbursable services, including extracorporeal shockwave therapy, transcranial doppler testing, and videonystagmus testing (the "Fraudulent Services"). (*See id.* ¶¶ 1, 39, 64.) Specifically, Davy received periodic payments in exchange for allowing his name, license, and signature, and the Davy PCs' TINs to be used to bill for the Fraudulent Services. (*Id.* ¶ 64.) Once St. Louis received the documents that Davy signed, St. Louis and the St. Louis Entities took multiple steps to (i) unlawfully operate and control the Davy PCs; (ii) use the professional corporations to bill GEICO for the Fraudulent Services; and (iii) economically benefit themselves. (*Id.* ¶ 67.)

The Davy PCs had no fixed treatment locations and did not employ their own support staff, but instead were controlled by the St. Louis Entities, who entered unlawful referral agreements with others and used Defendants' names to perform the Fraudulent Services from more than 19 clinics in Brooklyn and Queens. (*Id.* ¶¶ 69–70.) At each of the clinics, unidentified individuals, rather than any licensed healthcare professionals, developed and controlled the patient base; the clinics provided patient access in exchange for kickbacks typically disguised as "rent." (*Id.* ¶¶ 75–76.) Insureds at the clinics were subjected to the Fraudulent Services despite no clinical basis for the services. (*Id.* ¶ 78.) Defendants also billed

GEICO extensively in a short period before claims could be investigated fully. (*See id.* ¶ 80.) For example, between May 17, 2021 and December 9, 2021, St. Louis and the St. Louis Entities used Hourglass to submit over 336 bills to GEICO involving 143 patients and seeking more than $319,000.00, and fraudulently obtained more than $146,000.00 from GEICO. (*Id.* ¶ 81.) In July 2021, St. Louis and the St. Louis Entities began to submit bills using Big Apple. (*Id.* ¶ 82.) Between July 6, 2021 and March 8, 2022, St. Louis and the St. Louis Entities used Big Apple to submit more than 673 bills to GEICO involving more than 181 separate patients and seeking more than $801,000.00 for Fraudulent Services purportedly performed on the Insureds, and fraudulently obtained more than $367,000.00 from GEICO. (*Id.*)

Through funding and collection arrangements, St. Louis, the St. Louis Entities, and others controlled the Davy PCs and their assets and realized an immediate benefit because they were paid a percentage on the face value of the billings submitted to GEICO for the Fraudulent Services. (*Id.* ¶ 85.) After obtaining the fraudulent documents from St. Louis and the St. Louis Entities, collection lawyers generated bills and cover letters in their name accompanying the bills and other documents and mailed them to GEICO. (*Id.* ¶ 86.)

Plaintiffs further allege that neither Davy nor any other licensed professionals were ever involved in the performance of the Fraudulent Services. (*Id.* ¶ 91.) Plaintiffs also claim that Davy knowingly permitted St. Louis and the St. Louis Entities to control the Davy PCs and to submit to GEICO thousands of billing forms, assignments of benefits, and medical reports/records using his name and the Davy PCs' TINs. (*Id.* ¶¶ 6, 174.) GEICO, in turn, relied on this false information to process such claims promptly pursuant to statutory and contractual obligations, resulting in damages of over $513,000 based on fraudulent charges. (*Id.* ¶ 180.)

### B.    Procedural History

GEICO initiated this action on October 12, 2022, alleging violation of the RICO Act and common law fraud and unjust enrichment claims against Defendants.  (Compl., ECF No. 1.)  Subsequently, GEICO served Defendants with process.  (*See* ECF Nos. 9–11.)  After Defendants failed to appear or otherwise respond to the Complaint, GEICO requested certificates of default against them.  (*See* ECF Nos. 12–14.)  However, Defendants appeared on November 21, 2022, and answered the Complaint on November 30, 2022.  (*See* ECF Nos. 15, 20.)  The Clerk of Court then denied GEICO's request for certificates of default.  (*See* Dec. 6, 2022 Dkt. Entry.)

In March 2023, GEICO amended the Complaint to add claims against St. Louis, the St. Louis Entities, and several John Doe Defendants.  (*See generally* Am. Compl., ECF No. 26.)  Defendants answered the Amended Complaint 14 days after the Amended Complaint was filed.  (ECF No. 30.)[3]  On July 27, 2023, GEICO and Defendants unsuccessfully attempted to settle this case at a settlement conference before then-Magistrate Judge Sanket J. Bulsara.  (*See* July 27, 2023 Min. Entry & Order.)  GEICO subsequently moved for a pre-motion conference seeking permission to seek summary judgment against Defendants, which Defendants initially opposed.  (*See* ECF No. 62; Jan. 5, 2024 Order, ECF No. 67.)  On November 27, 2023, however, defense counsel moved to withdraw, and the Court granted the application in January 2024.  (ECF Nos. 64–65; Jan. 5, 2024 Order, ECF No. 67.)  The Court ordered Davy to retain new counsel and warned that if Big Apple and Hourglass did not retain counsel by February

---

[3] After St. Louis and the St. Louis Entities failed to appear, in May 2023, the Clerk of Court entered default against these defendants, and GEICO later moved for default judgment against them.  (ECF Nos. 53–56, 60.)  On March 11, 2024, the Court granted GEICO's motion for default judgment against St. Louis and the St. Louis Entities.  (*See* Mar. 11, 2024 Order.)

6, 2024, they would be in default.  (Jan. 5, 2024 Order, ECF No. 67; *see also* Feb. 7, 2024 Order (extending the deadline to February 14, 2024).)  Big Apple and Hourglass failed to obtain new counsel and Davy did not respond to the Court's directives.  At GEICO's request, the Clerk of Court entered default against Defendants on February 23, 2024, and amended the certificates of default on March 7, 2024.  (ECF Nos. 81–83.)

GEICO moved for default judgment against Defendants in March 2024, seeking compensatory damages, prejudgment interest, and a declaratory judgment.  (Pls.' Mem., ECF No. 86-1 at 8.)  Judge Gonzalez referred the motion for report and recommendation.  (Mar. 22, 2024 Order.)  Judge Bulsara later denied the default judgment motion without prejudice for noncompliance with Local Civil Rule 55.2.  (*See* Sept. 26, 2024 Order.)  GEICO filed the instant motion for default judgment on December 10, 2024, seeking the same relief as the first motion.  (Pls.' Mem., ECF No. 88-8 at 8.)  Judge Gonzalez referred the motion for report and recommendation.  (Dec. 19, 2024 Order.)[4]  The Court held a motion hearing on May 13, 2025; only Plaintiffs appeared, despite service of the Court's scheduling order on all parties.  (May 13, 2025 Min. Entry; Hr'g Tr., ECF No. 91.)  Plaintiffs submitted post-hearing supplemental briefing at the Court's request.  (Vanunu Suppl. Decl., ECF No. 92.)  Defendants still have not appeared in this case since defense counsel withdrew in January 2024.

## II.    DISCUSSION

### A.    Legal Standards for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure employs a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104

---

[4] The case was reassigned to the undersigned on December 19, 2024.

(2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021). *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default. Fed. R. Civ. P. 55(a). If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment. Fed. R. Civ. P. 55(b)(1). *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021). To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up). The Court must draw all reasonable inferences in favor of the movant. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "'[a] default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant.'" *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

### B.    Jurisdiction & Venue

#### 1.    Subject Matter Jurisdiction

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action." *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*,

No. 20-CV-150 (ALC), 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125–27 (2d Cir. 2011)).

The Court has original jurisdiction over this action because the amount in controversy exceeds $75,000 and this action is between citizens of different states. 28 U.S.C § 1332(a)(1). *First*, the Amended Complaint alleges compensatory damages of $513,000.00, which far exceeds the statutory $75,000 threshold. (Am. Compl., ECF No. 26 ¶ 258(F), (J).) *Second*, each defendant's citizenship is diverse from Plaintiffs.' Plaintiffs are incorporated in Nebraska with their principal places of business in Maryland (Am. Compl., ECF No. 26 ¶ 32), and therefore are citizens of Nebraska and Maryland. *See Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.") (quoting 28 U.S.C. § 1332(c)(1)). Big Apple is a New York citizen because its principal place of business is in Brooklyn, New York. (Am. Compl., ECF No. 26 ¶ 34.) Hourglass is also a New York citizen because its principal place of business is in New York; it only has a separate TIN from Big Apple for filing purposes, and registered with the Department of State as "Big Apple Medical, P.C." (Hr'g Tr., ECF No. 91 at 4:15–25.) Finally, Davy is a citizen of New York because he resides in New York. (Am. Compl., ECF No. 26 ¶ 33.)[5]

---

[5] The Court also has subject matter jurisdiction based on the Amended Complaint's allegation of RICO Act violations. *See* 28 U.S.C. § 1331.

### 2. Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendants must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (subsequent history omitted).

The Court has personal jurisdiction over Defendants. *First*, GEICO properly served Big Apple and Hourglass with process by delivering copies of the Summons and Complaint to the New York Secretary of State. (Affs. of Service, ECF Nos. 10–11). This method of service on a corporation complies with federal and state procedural rules. Fed. R. Civ. P. 4(h)(1)(A), (e)(1); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1). Furthermore, GEICO properly served Davy by delivering copies of the Summons and Complaint to a person of suitable age and discretion at Davy's actual place of business at 4310 Church Avenue, Brooklyn, New York, and by mailing the summons to Davy at the same address in an envelope bearing the legend "personal and confidential." (Aff. of Service, ECF No. 9.) This service method complies with federal and state procedural rules for service on individuals. Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2); *see Tzilin v. Jimmy G Constr. Corp.,* No. 23-CV-4047 (ENV)(MMH), 2024 WL 4309775, at *3 (E.D.N.Y. Sept. 26, 2024), *adopted by* Order Adopting R. & R., *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH)

(E.D.N.Y. Jan. 15, 2025). (recognizing that similar service methods on individual defendant complied with N.Y. C.P.L.R. § 308(2)).

*Second*, the Court also has general jurisdiction over Defendants.  The Court has general jurisdiction over the Davy PCs because they are New York corporations doing business in New York.  *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) and N.Y. C.P.L.R. § 301).  Furthermore, the Court has general jurisdiction over Davy because he is a resident of New York.  *See Gov't Emps. Ins. Co. v. MC Physical Therapy, P.C.,* No. 23-CV-3536 (OEM) (PK), 2024 WL 4648143, at *4 (E.D.N.Y. Sept. 12, 2024), *adopted by* Order Adopting R. & R., *Gov't Emps. Ins. Co. v. MC Physical Therapy, P.C.,* No. 23-CV-3536 (OEM) (PK) (E.D.N.Y. Sept. 28, 2024).

*Third*, "[s]ince jurisdiction is proper for [Defendants] under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process." *Francis*, 2018 WL 4292171, at *3.  Defendants therefore "ha[ve] sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case."  *Licci*, 673 F.3d at 60 (citation omitted).

### 3.    Venue

"[A] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(a)(1).  A corporation is deemed to be a resident of "any district" in "a state which has more than one judicial district and in which . . . [that] corporation is subject to personal

jurisdiction at the time an action is commenced." *Id.* § 1391(d). Venue is proper in this district because all Defendants are New York residents and, as noted, are subject to personal jurisdiction in this district. *Id.* § 1391(b)(1).

### C.    Default Judgment Factors

Courts apply the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment. *See Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH), 2025 WL 832730, at *5 (E.D.N.Y. Mar. 18, 2025) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)), *adopted by* Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Mar 31, 2025), *as amended by* Am. Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Apr. 9, 2025). Specifically, courts examine "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiffs' favor. As to the first factor of willfulness, "[e]ntry of default is appropriate . . . where a defendant 'affirmatively signals to the district court its intention to cease participating in its own defense, even after the defendant was clearly warned that a default would result[.]'" *S & K Commack Dev., LLC v. Hasn Dry Cleaners, Inc.*, No. 13-CV-5297 (SJF)(ARL), 2015 WL 4139357, at *7 (E.D.N.Y. July 9, 2015) (cleaned up) (quoting *Mickalis Pawn Shop*, 645 F.3d at 130). "Defendants' failure to defend against [GEICO's] claims demonstrates their default was willful. [Big Apple and Hourglass] failed to

12

obtain new counsel after [their] counsel withdrew, and [Davy] failed to notify the Court of [his] intention to defend, despite being ordered to do so." *Melo v. Milagro Grocery Corp.*, 750 F. Supp. 3d 38, 53 (E.D.N.Y. 2024). Defendants' failures to comply with the Court's directives, despite warnings about the potential consequences, supports a finding of willfulness.

*Second*, "Defendants filed an Answer denying most of the allegations in the Complaint and asserting affirmative defenses," so it could have had meritorious defenses. *Id.* at 53 (citing *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 124 (E.D.N.Y. 2011)). "However, a defendant must 'present evidence of facts that if proven at trial, would constitute a complete defense.'" *Rodriguez*, 784 F. Supp. 2d at 124 (quoting *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998)). By failing to appear with counsel (the Davy PCs) or to participate in this action as a *pro se* litigant (Davy), Defendants declined to pursue their affirmative defenses. In other words, "[Defendants'] prior assertion of a meritorious defense does not preclude entry of default judgment now." *Melo*, 750 F. Supp. 3d at 53 (citing *Integrity Commc'ns Corp. v. Baker*, No. 10-CV-3238 (DAB)(RLE), 2012 WL 1309153, at *2 (S.D.N.Y. Mar. 26, 2012), *adopted by* 2012 WL 1309136, at *1 (S.D.N.Y. Apr. 16, 2012)).

*Third*, Plaintiffs will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court." *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK)(SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022) (cleaned up), *adopted by* 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022). In other words, because Defendants abandoned the case, "[w]ithout the entry of a default judgment, [Plaintiffs] would be unable to recover for the claims adequately set forth in the [Amended] Complaint." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB)(SJB), 2019 WL

312149, at *4 (E.D.N.Y. Jan. 3, 2019) (cleaned up) (quoting *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946 (JS)(AKT), 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015)).  Based on the foregoing, entry of default judgment is permissible.

## D.    Liability

GEICO seeks a default judgment: (i) on its First Cause of Action for a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 against Big Apple and Hourglass; (ii) on its Sixth Cause of Action against Big Apple and Davy for common law fraud; and (iii) on its Tenth Cause of Action against Hourglass and Davy for common law fraud.  (Vanunu Decl., ECF No. 88-1 ¶ 2.)  GEICO also seeks to impose joint and several liability on Defendants.  (Pls.' Mem., ECF No. 88-8 at 27.)[6]

### 1.    Common Law Fraud

In the Sixth and Tenth Causes of Action in the Amended Complaint, GEICO alleges that Defendants committed common law fraud.  (Am. Compl., ECF No. 26 ¶¶ 220–26, 245–51; Pls.' Mem., ECF No. 88-8 at 20–26.)  In this diversity action, the Court applies the substantive law of the state in which the district is located.  *See Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006).

---

[6] Because Plaintiffs do not seek default judgment against Defendants for their RICO Act or unjust enrichment claims (*i.e.*, the Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, and Eleventh Causes of Action, *see* Am. Compl, ECF No. 26 ¶¶ 191–219, 227–44, 252–57), the Court deems those claims abandoned.  *See Root Bros. Farms v. Big Big Produce, Inc.*, No. 21-CV-1962 (EK)(MMH), 2022 WL 4586185, at *8 (E.D.N.Y. Aug. 2, 2022), *R. & R. adopted by* No. 21-CV-1962 (EK)(MMH), 2022 WL 4586350 (E.D.N.Y. Sept. 29, 2022).  Further, Plaintiffs agreed to withdraw any claims against the John Doe Defendants upon entry of judgment against Defendants. (Hr'g Tr., ECF No. 91 at 18:12–18.)  The Court therefore does not consider any claims against the John Doe Defendants.

Under New York law, a plaintiff asserting a claim of common law fraud must plausibly allege: "'(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff.'" *Sulieman v. Igbara*, 599 F. Supp. 3d 113, 122 (E.D.N.Y. 2022) (quoting *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)).   Additionally, in federal court, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  As a result, a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (citation omitted).

### a.    Material Misrepresentations

Here, GEICO has sufficiently met the Rule 9(b) standard.  *Gov't Emps. Ins. Co. v. Armengol*, No. 20-CV-6052 (RPK)(SJB), 2022 WL 432320, at *6 (E.D.N.Y. Jan. 19, 2022) ("*Armengol I*") (collecting cases), *adopted in relevant part by* 2022 WL 426163 (E.D.N.Y. Feb. 11, 2022).  Attached to the Amended Complaint are exhibit charts that detail Big Apple and Hourglass's claim submissions between July 28, 2021, and February 2, 2022, showing, *inter alia*, the dates, the provider for each claim, service descriptions, and the amount of each claim.  (Am. Compl. Ex. 1, ECF No. 26-2; Pls.' Mem., ECF No. 88-8 at 21.)  GEICO alleges that each of the claims contained one or more fraudulent statements or omissions, including, *inter alia*, that: (1) the representation that Davy had performed the Fraudulent Services and that his name, license and the Davy PCs' TINs were being legitimately used to bill for the

Fraudulent Services, when in fact Davy had not performed any of the services and St. Louis and the St. Louis Entities secretly controlled and operated the Davy PCs; (2) the representation that the billed-for services had been rendered and were reimbursable, when in fact the claim submissions uniformly misrepresented and exaggerated the level, nature, necessity, and results of the services that purportedly were provided; and (3) the representation that the billed-for services were medically necessary when they were provided—to the extent provided at all—pursuant to the dictates of unlicensed laypersons, not based upon legitimate decisions by licensed healthcare providers.  (*See, e.g.*, Am. Compl., ECF No. 26 ¶¶ 222, 247.)  GEICO also alleges that "[n]otwithstanding the clear language of the [CPT] code, the bills from both Davy PCs fraudulently unbundled the service in the billing that was prepared and submitted by duplicating the code multiple times," thus artificially and fraudulently doubling or tripling the amount of reimbursement for each date of services.  (*Id.* ¶ 117.)  These allegations state with particularity Defendants' material misrepresentations.

### b.    Knowledge & Intent to Defraud

Despite Rule 9(b)'s particularity requirement, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (quoting Fed. R. Civ. P. 9(b)).  A plaintiff must plead facts "that give rise to a strong inference of fraudulent intent."  *Loreley Fin.*, 797 F.3d at 171 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006)).  "That inference can be demonstrated either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Sulieman*, 599 F. Supp. 3d at 121 (cleaned up).

Here, GEICO's particularized allegations regarding Defendants' materially false statements, combined with the allegations of Davy's knowledge regarding same, constitutes strong circumstantial evidence of Defendants' conscious misbehavior or recklessness. *Gov't Emps. Ins. Co. v. Erlikh*, No. 16-CV-7120 (DLI)(SJB), 2019 WL 1487576, at *6 (E.D.N.Y. Feb. 28, 2019), *adopted by* Order Adopting R. & R., *Gov't Emps. Ins. Co. v. Erlikh,* No. 16-CV-7120 (DLI)(SJB) (E.D.N.Y. Mar. 31, 2019).  For example, the Amended Complaint pleads detailed facts establishing that the Davy PCs were used as vehicles to submit large-scale fraudulent no-fault insurance billing to GEICO and other insurers.  (*See* Am. Compl. ECF No. 26 ¶¶ 68 ("In exchange for a set payment, Davy ceded control of the Davy PCs to [St. Louis, the St. Louis Entities,] and others"), 69 ("The Davy PCs have never had any legitimate indicia.  They had no fixed treatment locations . . . in any of the real property from which they purported to provide the Fraudulent Services . . . ."), 70 ("[T]he St. Louis Entities . . . controlled the fraudulent scheme by using the name of Davy and the Davy PCs on an itinerant basis . . . .").)  The Amended Complaint also specifies that Defendants not only knew that affirmative misrepresentations were being made when fraudulent claims were submitted to GEICO and other insurers, but that they did so intentionally as part of a calculated scheme.  (*See* Am. Compl., ECF No. 26 ¶ 6 ("Davy . . . knowingly permitted the other Defendants to control the Davy PCs and bill to GEICO and other New York automobile insurers using his name and the Davy PCs.").)

These facts, viewed in totality and in the light most favorable to GEICO, support the conclusion that Defendants knew the bills submitted under the Davy PCs' names were fraudulent, yet continued to permit their submission for payment of no-fault benefits. *Armengol I*, 2022 WL 432320, at *6 (collecting cases); *Sulieman*, 599 F. Supp. 3d at 123–24.

17

Thus, GEICO has alleged facts sufficient to raise an inference of Defendants' knowledge and intent to defraud.

### c.      Reasonable Reliance & Injury

Finally, with respect to reasonable reliance, GEICO sufficiently alleges that Defendants conveyed fraudulent statements or omissions on which GEICO reasonably and detrimentally relied.  *See Pilkington North America, Inc. v. Mitsui Sumitomo Ins. Co.*, 420 F. Supp. 3d 123, 148 (S.D.N.Y. 2019).   In particular, GEICO asserts that "[t]he facially valid documents submitted to GEICO . . . were designed to and did cause GEICO to rely upon them.   As a result, GEICO incurred damages of more than $513,000.00 based upon the fraudulent charges."  (Am. Compl., ECF No. 26 ¶ 180.)  Plaintiffs' allegations that Defendants concealed their fraud and submitted "facially valid" documents in support of the fraudulent charges satisfy the requirement that Plaintiffs' reliance should be reasonable.  *Erlikh*, 2019 WL 1487576, at *6–7.  Therefore, GEICO has sufficiently alleged the elements for their common law fraud claims (Sixth and Tenth Causes of Action).

### 2.      Joint and Several Liability

GEICO seeks to hold Big Apple and Davy jointly and severally liable and Hourglass and Davy jointly and severally liable for damages to GEICO.  (Pls.' Mem., ECF No. 88-8 at 27–28; *see* Vanunu Suppl. Decl., ECF No. 92 ¶¶ 9–10, 15–16.)  New York law provides that a court must hold defendants jointly and severally liable for all harm resulting from their conduct where defendants acted jointly and/or concurrently to produce a single injury.  *E.g.*, *Gov't Emps. Ins. Co. v. ALP Supply, Inc.*, No. 22-CV-79 (LDH)(MMH), 2023 WL 5846680, at *5 (E.D.N.Y. Sept. 11, 2023), *adopted by* Order Adopting R. & R., *Gov't Emps. Ins. Co. v. ALP Supply, Inc.*, No. 22-CV-79 (LDH)(MMH) (E.D.N.Y. Sept. 28, 2023); *Gov't Emps. Ins.*

*Co. v. Elmwood Park Med. Grp., P.C.*, No. 21-CV-617 (FB)(RER), 2022 WL 772737, at *10 (E.D.N.Y. Feb. 23, 2022), *adopted by* 2022 WL 768360 (E.D.N.Y. Mar. 14, 2022); *Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, No. 19-CV-4414 (KAM)(RLM), 2022 WL 17774929, at *12 (E.D.N.Y. June 24, 2022), *adopted by* Order Adopting R. & R., *Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, No. 19-CV-4414 (KAM)(RLM) (E.D.N.Y. Aug 1, 2022). "[A]n injury is divisible for the purposes of determining joint and several liability where there has been a clear allocation of fault between each defaulting defendant." *Elmwood*, 2022 WL 772737, at *10 (cleaned up) (collecting cases).

GEICO sufficiently alleges Davy's joint and several liability as to Big Apple and Hourglass, respectively. As alleged in the Amended Complaint, Davy, a licensed physician, "agreed to allow for the formation of the Davy PCs and to 'front' as their owner while allowing St. Louis and the St. Louis Entities to use his license and the Davy PCs as billing 'vehicles' for the fraudulent scheme committee against GEICO[.]" (*See* Am. Compl., ECF No. 26 ¶¶ 33, 62.) "Davy ceded all control of the Davy PCs to St. Louis" (*id.* ¶ 13), "never performed any of the Fraudulent Services, did not operate, manage, or control the Davy PCs . . . , and knowingly permitted [others] to control the Davy PCs and bill to GEICO . . . [by] using his name and the Davy PCs" (*id.* ¶ 6). Plaintiffs also allege that Davy would receive periodic payments in exchange for allowing his name, license, signature, and the Davy PCs' TINs to be used to bill for Fraudulent Services. (*Id.* ¶ 64.) In other words, Davy agreed to receive a portion the funds frequently obtained from GEICO. These allegations are sufficient to establish that Davy owned the Davy PCs and that the alleged harm to GEICO is indivisible between Davy as the nominal owner of each Davy PC, which submitted the bills to GEICO. *See Armengol I*, 2022 WL 432320, at *8 ("GEICO adequately alleged that [individual

defendant], as the nominal owner of the provider defendants, is jointly and severally liable for the damages attributed to each of the provider defendants that she nominally owned and submitted fraudulent claims through."); *see also Elmwood*, 2022 WL 772737, at *10 ("GEICO adequately alleges that [Individual Defendant] is jointly and severally liable for the damages attributed to [Corporate Defendants] as the nominal owner of those entities and as a direct participant in the submission (or in causing the submission) of the fraudulent claims to GEICO through those entities.").

For these reasons, the Court respectfully recommends that Davy should be jointly and severally liability with Big Apple and Hourglass, respectively, for any damages resulting from fraudulent bills submitted through either entity.

### E.    Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up). "On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a 'reasonable certainty.'" *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB), 2021 WL 7906551, at *8 (E.D.N.Y. Aug. 24, 2021) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)), *adopted by* Order Adopting R. & R., *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB) (E.D.N.Y. Sept. 16, 2021). A court may rely on detailed affidavits and documentary evidence to determine damages. *Allstate Ins. Co. v. Aminov*, No. 11-CV-2391 (MKB), 2014 WL 527834, at *7 (E.D.N.Y. Feb. 7, 2014) (citing *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

Here, GEICO seeks (1) compensatory damages of $357,808.43 from Big Apple and Davy jointly and severally and $123,424.70 from Hourglass and Davy jointly and severally; and (2) prejudgment interest.  (Vanunu Suppl. Decl., ECF No. 92 ¶¶ 10, 13, 16, 19, 22.)

### 1.    Compensatory Damages

GEICO requests compensatory damages because, as alleged, the Davy Defendants submitted fraudulent bills by making false statements or omissions in each submission.  (*See, e.g.*, Am. Compl., ECF No. 26 ¶¶ 221–23, 246–48.)  Where, as here, GEICO's fraud claim is premised on the allegation that each bill that Defendants submitted contained a material misstatement or omission, GEICO is entitled to damages in the entire amount paid to Defendants.  *Erlikh*, 2019 WL 1487576, at *9; *see also Elmwood*, 2022 WL 772737, at *10–11.  GEICO has submitted extensive charts of payments GEICO made to Big Apple and Hourglass in connection with the Davy Defendants' no-fault insurance reimbursement claims.  (Asmus Decl., ECF No. 88-5 ¶¶ 4, 7–8, 11–12; *id.* at 8–20 (Ex. 1 – Big Apple TIN Run), 21–33 (Ex. 2 – Hourglass TIN Run); Vanunu Suppl. Decl. Ex. 1, ECF No. 92-1; *id.* Ex. 2, ECF No. 92-2.)  These records were generated using GEICO's "earnings reporting system," which generates mandatory tax reporting forms whenever GEICO issues payments to healthcare providers and tracks the payments using TINs.  (Asmus Decl., ECF No. 88-5 ¶ 4.)  Courts in this Circuit have found this method to be reliable in calculating compensatory damages in similar insurance fraud cases.  *See, e.g.*, *ALP Supply*, 2023 WL 5846680, at *8; *Elmwood*, 2022 WL 772737, at *10.  And, in this case, GEICO's charts reflect payments of $357,808.43 to Big Apple and $123,424.70 to Hourglass.  (Asmus Decl., ECF No. 88-5 ¶¶ 5–6; *id.* at 8–20 (Ex. 1 – Big Apple TIN Run), 21–33 (Ex. 2 – Hourglass TIN Run); Vanunu Suppl. Decl. Ex. 1, ECF No. 92-1; *id.* Ex. 2, ECF No. 92-2.)

The Court thus respectfully recommends that Plaintiffs should be awarded compensatory damages of $357,808.43 from Big Apple and Davy jointly and severally and $123,424.70 from Hourglass and Davy jointly and severally.[7]

## 2.    Prejudgment Interest

GEICO also seeks prejudgment interest at a rate of nine percent per year on the fraud damages.  (Pls.' Mem., ECF No. 88-8 at 26–27; Vanunu Decl., ECF No. 88-1 ¶¶ 17–18.)  In diversity cases, New York law governs the award of prejudgment interest.  *Elmwood*, 2022 WL 772737, at *11 (citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 249 (2d Cir. 2000)).  New York law specifically mandates an award of prejudgment interest on fraud damages and typically requires the computation of interest "from the earliest ascertainable date the cause of

---

[7] At the May 13, 2025 motion hearing, GEICO briefly argued that any monies received from the judgment against St. Louis and the St. Louis Entities should not offset any judgment against Defendants. (Hr'g Tr., ECF No. 91 at 15:2–5.) "Generally, 'when a plaintiff settles with one of several joint tortfeasors, the non-settling defendants are entitled to a credit for that settlement' though nothing prohibits a plaintiff from recovering more than his actual losses." *Sirius XM Radio Inc. v. Aura Multimedia Corp.*, No. 21-CV-6963 (GHW)(SDA), 2024 WL 1756854, at *8 (S.D.N.Y. Apr. 6, 2024) (citing *Johnson v. Dumphy*, No. 09-CV-2758 (ILG)(SMG), 2011 WL 6101957, at *5 (E.D.N.Y. Nov. 14, 2011), *adopted by* 2011 WL 6111236 (E.D.N.Y. Dec. 7, 2011) (which quotes *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 208, 219 (1994))), *adopted by* 2024 WL 1739905 (S.D.N.Y. Apr. 23, 2024).  "Most Courts in the Second Circuit however have held that that a defendant in default may not invoke the benefits of the set-off rule."  *Allstate Ins. Co. v. Yehudian*, No. 14-CV-4826 (JS)(AKT), 2018 WL 1767873, at *19 (E.D.N.Y. Feb. 15, 2018) (cleaned up), *adopted by* 2018 WL 1686106 (E.D.N.Y. Mar. 31, 2018) (collecting cases).  "Indeed, New York courts confronted with a non-settling defendant who has defaulted have decided that the windfall should not accrue to the benefit of the party who has refused to participate in litigation."  *JTH Tax LLC v. Sanchez*, No. 22-CV-6160 (AS)(JLC), 2023 WL 6813449, at *3 (S.D.N.Y. Oct. 16, 2023) (citing *RLI Ins. Co. v. King Sha Grp.*, 598 F. Supp. 2d 438, 446 (S.D.N.Y. 2009)), *adopted by* 2023 WL 8936352 (S.D.N.Y. Dec. 27, 2023).  The Court agrees that an offset is not warranted where there have been no monies collected on the judgment against St. Louis and the St. Louis Entities.  *See Gov't Emps. Ins. Co. v. Spectrum Neurology Grp., LLC*, No. 14-CV-5277 (ENV)(SMG), 2016 WL 11395017, at *7–8 (E.D.N.Y. Feb. 17, 2016), *adopted sub nom. Gov't Emps. Ins. Co. v. Premier Pro. Servs., LLC*, No. 14-CV-5277 (ENV)(SMG), 2016 WL 1071099 (E.D.N.Y. Mar. 18, 2016).

action existed," such as, for insurance fraud, the date the insurance company makes payment. *Elmwood*, 2022 WL 772737, at *11. (citing N.Y. C.P.L.R. §§ 5001(b), 5004).

In this case, prejudgment interest should be awarded to GEICO at the rate of 9% per year. GEICO provides detailed calculations of prejudgment interest through December 10, 2024. (Vanunu Decl. Ex. 5, ECF No. 88-6; Vanunu Suppl. Decl. Ex. 1, ECF No 92-1; *id*. Ex. 2, ECF No. 92-2.) Each chart identifies the relevant claim number, TIN, the amount paid to Big Apple or Hourglass, the date when the check was issued, the check number, and the amount of prejudgment interest owed for each payment based on the total number of days between the date each check was issued and December 10, 2024. (*Id.*) For each claim, the calculated daily interest rate is stated as 0.02466% (9% annual rate divided by 365 days per year). Based on those calculations, the Court respectfully recommends that the total prejudgment interest due from Big Apple and Davy should be $95,968.07 and from Hourglass and Davy, $33,916.30. (Vanunu Suppl. Decl., ECF No. 92 ¶¶ 13, 19; *id*. Ex. 1, ECF No. 92-1 at 11; *id*. Ex. 2, ECF No. 92-2 at 11.) Further, from December 11, 2024 to the date judgement is entered, the interest should accrue against Big Apple and Davy at a rate of $88.24 per day and the interest should accrue against Hourglass and Davy at a rate of $30.44 per day.[8]

## F.    Declaratory Judgment

Finally, GEICO requests that the Court declare Big Apple and Hourglass ineligible for payment on all the previously submitted and unpaid bills submitted to GEICO (the "pending claims"). (Pls.' Mem., ECF No. 88-8 at 18.)

---

[8] The respective daily interest rates are based on multiplying the payments made to Big Apple ($357,808.43) and Hourglass ($123,424.70) by the daily interest rate of 0.02466%. (*See* Vanunu Suppl. Decl., ECF No. 92 ¶¶ 14, 20.)

Pursuant to the Declaratory Judgment Act ("DJA"), "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  An "actual controversy" refers to "the same type of 'cases' and 'controversies' embodied in Article III of the Constitution."  *Gov't Emps. Ins. Co. v. Armengol*, No. 20-CV-6052 (RPK)(SJB), 2023 WL 2396099, at *2 (E.D.N.Y. Feb. 9, 2023) ("*Armengol II*") (quoting *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013)), *adopted by* Order Adopting R. & R., *Gov't Emps. Ins. Co. v. Armengol*, No. 20-CV-6052 (RPK)(SJB) (E.D.N.Y. Mar. 7, 2023)  "[T]he critical 'question . . . is whether . . . there is a substantial controversy, between parties having adverse legal interests, of *sufficient immediacy and reality* to warrant the issuance of a declaratory judgment."  *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (quoting *MedImmune v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), which in turn quotes *Md. Cas. Co. v. Pac. Coal & Oil*, 312 U.S. 270, 273 (1941)).

Here, "'Plaintiffs have established that an actual controversy exists and that a declaratory judgment would afford specific and conclusive relief as to pending claims'" with respect to Defendants.  *ALP Supply*, 2023 WL 5846680, at *9 (quoting *Spectrum Neurology*, 2016 WL 11395017, at *5).  GEICO alleges that Big Apple and Hourglass have pending bills submitted to GEICO that GEICO has no obligation to pay.  (Am. Compl., ECF No. 26 ¶¶ 221–23; 246–48; Asmus Decl., ECF No. 88-5 ¶¶ 9–10; *id.* Exs. 3–4, ECF No. 88-5 at 34–49.) Additionally, GEICO has submitted documentation of pending collections actions that Big Apple and Hourglass are actively prosecuting against GEICO in New York state courts. (Asmus Decl., ECF No. 88-5 ¶ 13; *id.* Ex. 5, ECF No. 88-5 at 50–52.)  GEICO has provided a

list of the actions, including the amounts involved, the claim numbers, and the status of each action.  (Asmus Decl. Ex. 5, ECF No. 88-5 at 50–52.)  "Courts in this district routinely grant declaratory relief in similar circumstances, where fraudulently incorporated medical practices have fraudulent claims pending against insurers for No-Fault benefits."  *Elmwood*, 2022 WL 772737, at *13 (citing cases); *cf. Armengol I*, 2022 WL 432320, at *11 (denying GEICO's request for declaratory judgment in part because GEICO had not provided lists of cases naming the collection actions, where the cases were pending, who the parties were, or the amounts involved).  Therefore, the Court respectfully recommends that a declaratory judgment should be entered that GEICO is not legally obligated to pay any pending claims submitted by Big Apple and Hourglass.

## III.  <u>CONCLUSION</u>

For the reasons stated above, the Court respectfully recommends that Plaintiffs' motion for default judgment at ECF No. 88, supplemented at ECF No. 92, should be **granted** as follows:  (1) a default judgment should be entered against Defendants for common law fraud; (2) Plaintiffs should be awarded (a) compensatory damages of $357,808.43 jointly and severally against Big Apple Medical Services, P.C. and Andrew Davy and $123,424.70 jointly and severally against Big Apple Medical Services d/b/a Hourglass and Davy; (b) prejudgment interest of: (i) $95,968.07 jointly and severally against Big Apple Medical Services, P.C. and Andrew Davy, with a daily rate of $88.24 accrued from December 11, 2024 to the date when the judgment is entered and (ii) $33,916.30 jointly and severally against Big Apple Medical Services d/b/a Hourglass and Andrew Davy, with a daily rate of $30.44 accrued from December 11, 2024 to the date when the judgment is entered; and (3) a declaratory judgment

should be entered that Plaintiffs have no obligation to pay any pending claims submitted by Big Apple Medical Services, P.C. and Big Apple Medical Services d/b/a Hourglass.

A copy of this Report and Recommendation is being served on GEICO via ECF.  The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Defendants at the following addresses forthwith: (1) Big Apple Medical Services, P.C., 4310 Church Avenue, Brooklyn, New York 11203; (2) Big Apple Medical Services doing business as Hourglass Medical Services, 4310 Church Avenue, Brooklyn, New York 11203; and (3) Andrew Davy, 3474 Wilson Avenue, Apt. GA, Bronx, New York 10469.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Gonzalez.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 12, 2025

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge